## BAZILIE FUSELIER AND HUSBAND v. J. D. BABINEAU.

A judgment against the tutor upon the account of tutorship does not conclude the tutor's surety, although *prima facie* evidence against him.

When a solidary co-debtor pays in discharge of the whole debt less than the whole amount of the debt, he cannot claim from his co-debtor reimbursement of his portion of the whole debt, but only of the amount paid.

Any convention to the contrary between the creditor and the co-debtor making the payment, produces no effect upon the rights of the co-debtor, who was not a party to such convention.

The surety on a tutor's bond is not liable for what came into the tutor's hands before signing the bond.

The tutor is bound to pay interest on all sums of money of the minor, which come into his hands.

APPEAL from the District Court of the Parish of St. Martin, *Martel, J. E. Simon* and *C. H. Mouton,* for plaintiff and appellant. *Martin Voorhies,* for intervenors. *A. DeBlanc* and *J. G. Olivier,* for defendant.

BUCHANAN, J. Mrs. Fuselier, the plaintiff, sues defendant, who is one of two co-sureties of her late tutrix, for a balance of account of tutorship, due by the latter, as settled by a judgment obtained by plaintiff against her said tutrix.

The bond, subscribed by defendant, on which this action is based, reads as follows:

"*State of Louisiana—Parish of St. Martin.*

"Know all men by these presents, that we, *Julie Picard,* widow of *Simon David,* and now the wife of *Ursin Ozenne,* and by him duly authorized, of the parish of St. Martin, and *Antonio Bauvais* and *Joseph D. Babineau,* of the same parish of St. Martin, are held and firmly bound unto *Alphonse Robin,* Judge of the parish of Pointe Coupée, and to his successors in office, in the sum of thirty thousand dollars, for the payment whereof, well and truly to be made, we bind ourselves, our heirs, &c., firmly by these presents, dated at the parish of St. Martin, this third day of January, one thousand eight hundred and thirty-eight. The condition of the above obligation is such, that whereas the above bound *Julie Picard* has been appointed by the Judge aforesaid, tutrix of *Basilie Fuselier* and *Ludger Fuselier,* her grand-children: Now, therefore, if the said *Julie Picard* shall well and truly fulfill the duties incumbent on her as tutrix aforesaid, and shall account for and pay over to the said *Bazilie Fuselier* and *Ludger Fuselier,* or to their legal representatives, or to such person or persons as shall be entitled to the same, when thereto legally required, all such sum or sums of money as shall come into her hands as tutrix aforesaid, then the above obligation to be void, otherwise to remain in full force and effect.

(Signed)                                   J. P. OZENNE,
                                           UR. OZENNE,
                                           ANTOINE BAUVAIS,
                                           JOSEPH D. BABINEAU."

The petition in this case was filed the 3d of March, 1853. The defendant filed his answer the 3d of October, 1853. The parties went to trial, and judgment was rendered by the District Court on the 5th day of October, 1854, decreeing that plaintiff recover of defendant the full amount of the judgment against the tutrix, subject to certain credits.

An appeal was taken by defendant, which was decided by this court in May, 1856, remanding the cause for a new trial. 11 An. 393.

The case being thus reopened in the court below, a new party made her appearance in that court, to-wit, *Julie Desirée Bauvais*, wife of *Hiliare Gradnigo*, and daughter and sole heir of *Antoine Bauvais*, deceased, the co-surety of defendant in the bond of tutorship, who, on the 3d of March, 1857, filed a petition of intervention, alleging that, having been bound to plaintiff as heir of her father, and having been sued by plaintiff upon her said liability, she had, (by a notarial act, annexed and made part of the petition of intervention,) shortly after the rendition of the judgment of the District Court against defendant, settled in full with plaintiff for the claims of the latter, reckoning said claims at the amount fixed by said judgment, to-wit, $22 382 75 ; and had taken a subrogation from plaintiff, by the same act of the rights of the latter against defendant, under the bond of tutorship.

The petition of intervention goes on to aver, that by the judgment of the Supreme Court, subsequently rendered, an item of $2,584 50, allowed by the judgment of the District Court, as a just claim of plaintiff against her tutrix and the sureties, had been rejected and disallowed; by means whereof, the intervenor was entitled to claim back from plaintiff the said amount, with accruing interest, as so much paid in error.

The petition of intervention concludes with a prayer for judgment against plaintiff for the sum paid in error ; and for judgment against defendant, for whatever amount the court may fix as due by said *Babineau* on his bond of suretyship.

The act of compromise annexed to the petition of intervention shows, that, on the 24th of October, 1854, the plaintiff and the intervenor appeared before a Notary Public, and, after declaring that the intervenor was bound, *in solido*, with the defendant, for the balance due by plaintiffs' late tutrix ; and also, that such balance amounted, at the date of the act, under the judgment of the District Court, lately rendered against defendant in this suit, to a sum of $22,382 75— the act proceeds to recite that intervenor pays to plaintiff eighteen thousand dollars, in cash and notes of hand ; of which sum, the parties agreed, that $11,191 37½, was paid for the half of intervenor's co-surety, *Babineau,* and 6,808 62½, for the half of the intervenor herself, in the joint and several obligation of the said sureties under their bond, and the judgment of the District Court.

As this contract is made the foundation of a pretention to render one of two co-sureties, liable to reimburse to the other about two-thirds of what has been paid by the latter to the common creditor, in discharge of the joint and several obligation of both, it is proper to repeat textually the form of words by which it is supposed that such an effect has been produced. The contract says :

" Quoique la dame *Julie Désirée Bauvais* et le sieur *Joseph D. Babineau* soient tous les deux responsables solidairement envers la dite dame *Basilie Fuselier*, de la somme de vingt-deux mille trois cent quatrevingt-deux piastres soixante-quinze cents, il est néanmoins convenu ici que chacun individuellement vis-à-vis l'un de l'autre, n'est débiteur que de la moitié de cette somme. La dame *Baselie Fusilier,*

en pleine et entière satisfaction de la moitié du dit jugement qui est dûe par la dame *Julie D. Bauvais*, consent à accepter d'elle la somme de six mille huit cents huit piastres, soixante-deux cents et demi ; et pour l'autre moitié, qui est dûe par *Joseph D. Babineau*, dont la dite dame *Julie Désirée Bauvais* se trouve responsable en raison de la solidarité, la dite dame *Bazilie Fuselier*, en pleine et entière satisfaction de la dite moitié, consent à accepter la somme de onze mille cent quatrevingt-onze piastres, trente-sept cents et demi, ces deux sommes réunies formant celle de dix-huit mille piastres, montant auquel ont été fixées les conditions du présent arrangement, ce qui a été payé ainsi qu'il est ci-après mentionné, dont quittance. Par considération du paiement de la dite somme de onze mille cent quatrevingt-onze piastres et trente cents et demi, portion dûe par *Joseph D. Babineau*, la dite dame *Bazilie Fuselier* subroge la dite dame *Julie Désirée Bauvais* dans tous les droits, titres et prétensions qu'elle a et peut avoir contre le dit *Joseph D. Babineau* en vertu du jugement dont il est parlé plus haut."

It is very clear, that from and after the date of this contract, or *arrangement,* as the act styles it, the plaintiff was without interest in this suit. She was paid and satisfied in full. And she so declares in her answer filed to the petition of intervention ; claiming that the notarial act of the 24th of October, 1854, was a *compromise* or *transaction,* having the force of the thing adjudged between herself and the intervenor, " who was subrogated both by the operation of law and an express stipulation to that effect, to all the rights, claims and demands of this respondent, against the said *Joseph D. Babineau,* the co-surety of *Bauvais."*

We concur in this view of the position of those two parties (the plaintiff and the intervenor) in relation to each other ; and view the suit, from the moment of the appearance of the intervenor in court, as being prosecuted exclusively for her account and benefit.

The defendant answered the petition of intervention, by alleging fraud and collusion in the judgment rendered in favor of plaintiff against *Mr.* and *Mrs. Ozenne,* in the parish of Pointe Coupée, and pleaded various other defences.

Upon these issues the parties went to trial, and the judgment of the District Court was, that plaintiff take nothing by her action against defendant ; and that all the rights and claims of the intervenor, *Julie Desirée Bauvais,* be reserved for future adjudication. The plaintiff and the intervenor both appealed.

The plaintiff has no cause to complain of this judgment. She has, by her own avowal, nothing to claim from the defendant. The only issue in this record which concerns her, is the claim made by the intervenor against her for restitution of the sum by which the first judgment of the District Court was reduced by our decision on the previous appeal ; and also for restitution of such other sums as should be deducted in favor of defendant, upon the final decision of the cause. This issue, indeed, is disposed of by the construction which we have put upon the notarial act of the 24th of October, 1854, (C. C. Art. 3045,) and whatever difference of opinion there may be as to the nature and effect of the said act, there can be none in relation to another act subsequently passed between the same parties (the plaintiff and the intervenor) : by which act, the intervenor consents to receive, in full satisfaction of all claims made by her against the plaintiff, the sum of twelve hundred and fifty dollars, which sum the plaintiff paid the intervenor in an endorsed note ; and the intervenor thereupon declares that she has no claim of any nature whatever, against the plaintiff. And the intervenor, *Mrs. Gradnigo,* by the same act, discontinues her demand in intervention as against the plaintiff, *Mrs. Fuselier,* and all demands of deductions from the balance of

the account of the tutorship of the plaintiff established by the judgment of the District Court of Pointe Coupée, and the arrangement or settlement by notarial act of the 24th of October, 1854 : *Mrs. Gradnigo* consenting to withdraw her intervention from court, or to permit judgment to be entered up against her upon the same, at the option of *Mrs. Fuselier*. And it was further agreed between the parties to said act, that *Mrs. Gradnigo* might, if she thought proper, prosecute the present action against the defendant, in order to render available her recourse against defendant under the bond of tutorship ; that *Mrs. Fuselier* will only remain in said suit for the purpose of asserting the rights which she may have to the costs and expenses of the suit, and for no other purpose : it being well understood that if *Mrs. Gradnigo* concludes to prosecute further the present action, in the name of *Mrs. Fuselier*, that the latter shall not be held or bound either towards *Mrs. Gradnigo*, or towards any third person, for any sum, or for any fact resulting from the issue and decision of the suit ; that is to say, that *Mrs. Gradnigo* will take the suit in the situation and condition in which it is at present, between the primitive parties, and will prosecute it in the same manner, to the same ends, with the same consequences and the same responsibilities, as if she had instituted it herself, and as if *Mrs. Fuselier* had never had any part therein ; saving and excepting that *Mrs. Gradnigo* will not be bound for any costs incurred to the date of the act, (12th of March, 1858,) other than those of her intervention, whatever may be the issue of the suit. The intention of the parties being to save *Mrs. Gradnigo* the delays of the new action which she would have to institute, in order to assert her recourse against defendant, did she not prosecute the present action.

The appellant, *Mrs. Fuselier*, being thus out of court, and the appellant, *Mrs. Gradnigo*, prosecuting her co-surety under her legal and conventional subrogation to the rights of plaintiff, as well as in virtue of the assignment and transfer of this action to her made, it remains to inquire what are the matters in controversy between the defendant and the intervenor.

This appellant argues that there are but three points left open by the former judgment of this court, to-wit :

1st. The amount received by *Gabriel Fuselier*, husband of plaintiff, by transfer of claims belonging to his wife.

2d. The confusion of the qualities of debtor and creditor in the intervenor.

2d. The plea of *res judicata* as to *Mrs. Ozenne's* interest in the succession of *Ludger Fuselier*, deceased.

We do not concur in this view of the present position of the cause. The decree is the only indication of what was decided by the court ; and that decree simply remands the cause for a new trial, with leave to defendant to amend his pleadings.

There was no judgment for any particular items of the account of tutorship, or decree disallowing any particular item of said account. The whole of said account, or at least so much of it as the parties have commented upon, is before us for adjudication.

We have enounced, in our previous decision, the doctrine, that the judgment against the tutor, upon the account of tutorship, does not conclude the tutor's sureties, although *prima facie* evidence against them. To this doctrine we adhere ; and the party, who has, since the cause was remanded, stept into the shoes of plaintiff, is bound by it.

I. In examining the account, we commence by observing, that no matter what

FUSELIER
v.
BABINEAU.

may have been the correct amount due by the tutrix and by her sureties to her ward, the plaintiff, yet the intervenor, who now occupies the place of plaintiff, can never recover more from 'her co-surety, the defendant, than the half of the amount, which she paid the plaintiff in satisfaction of her rights under the bond. Any deduction made by plaintiff from the amount justly due her, enures to the benefit of all the sureties *pro rata*. One of several solidary debtors, who discharges the common debt, cannot be allowed to speculate at the expense of his co-debtors. Article 2100 of the Code declares, that a solidary co-debtor who pays the whole debt, can claim from each of his co-debtors only the part and portion of each. But if the debtor was paid in discharge of the whole debt, less than the whole amount of such debt, we are not to infer from this Article, that he can claim from his co-debtors reimbursement of the portion of each in the whole debt, but only of their portions in the amount paid. And any convention to the contrary between the creditor and the co-debtor who has paid the creditor, such as we have seen stipulated between plaintiff and intervenor, on the 24th of October, 1854, can have no effect upon the right of the co-debtor, who was not a party to such convention.

Mrs. *Gradnigo*, when she discharged the debt for which she and defendant were jointly and severally responsible, acquired, of right, (C. C. 2157,) a subrogation to the rights of the common creditor. But those rights were fixed by the creditor at the amount which she thought fit to accept from Mrs. *Gradnigo*, in satisfaction of the whole debt; and the legal consequences of the payment, as between the solidary co-debtors, were beyond the power of the creditor to modify or control. A stronger case than this, in favor of the pretentions of the intervenor, was presented in Roman v. Forstall, 11 An. 717, where it was held, that the co-debtor, the transferree of a third person who had paid the debt, and taken a conventional subrogation, was only entitled to recover his co-debtor's proportion of the amount which had been actually paid.

II. The surety is not liable, under this bond, for anything that came into .the tutrix's hands, before the signing of the bond.

III. The defendant is not liable, for reasons giving in our previous decision, for the item of $2,584 50, collected by Mr. Janin and applied to the payment of a debt of Mrs. Ozenne to Gabriel Fuselier.

IV. The grandmother of plaintiff was not her presumptive heir, at the time she was appointed her tutrix.

V. Neither was she an heir of her deceased grandson, Ludger Adolphe Fuselier; and the allotment to her of a *portion* of his estate as heir, was an error which did not constitute res judicata against plaintiff, and might be, as it was, rectified by a subsequent judgment.

VI. The counsel of appellee argues, that interest was improperly charged the tutrix upon the various sums of money received by her.

This argument is based upon a variation between the expressions used in Art. 71, p. 70 of the Code of 1808, and Art. 341 of the Code of 1825. The former provides, that the tutor is bound to pay to his ward, interest at the rate of five per cent. on all sums which he shall have received on his account, from the time he shall have received such sums respectively, without being admitted to free himself from such interest, under pretence of his not having been able to lay the money out.

The Article 341 of the new Code, directs the tutor to invest in the name of his minor, the revenues which exceed the expenses of his ward, whenever they

amount to the sum of five hundred dollars. And in default of making such investment, the tutor is bound to pay (by the Act of 1825, p. 198, ₹ 1) legal interest.

The obligation of the tutor to pay interest on moneys of the minor which come into his hands, can scarcely be considered an open question, at this day ; after the many decisions recognizing such an obligation, since the Code of 1825 is in force.

We will content ourselves, therefore, with observing that the word *revenues* in the first paragraph of the Article 341, is to be taken as synonimous with the word *funds* in the second paragraph of the same Article ; and as meaning all moneys belonging to the minor, that come into the hands of the tutor in the course of administration.

We state the account of the liabilities of defendant, under the bond of tutorship subscribed by him as surety of *Julie Picard Ozenne*, as follows :

Items of judgment against the tutrix allowed—

| Item No. 2, | Capital, | $ 179 03. | Interest, | $ 129 77. | Commissions, | $ 12 97 |
|---|---|---|---|---|---|---|
| 3, | " | 1,003 18 | " | 720 00 | " | 72 00 |
| 4, | " | 237 89 | " | 160 27 | " | 16 02 |
| 5, | " | 6,986 75 | " | 4,794 20 | " | 479 42 |
| 6, | " | 5,964 30 | " | 3,799 70 | " | 379 97 |
| 7, | " | 5,964 30 | " | 3,496 00 | " | 349 60 |
| 9, | " | 1,007 48 | " | 484 75 | " | 48 47 |
| 10, | " | 627 30 | " | 288 92 | " | 28 89 |
| 11, | " | 971 70 | " | 456 11 | " | 45 61 |
| | | $22,941 93 | | $14,329 72 | | $1,432 97 |

Amount of capital.......................................$22,941 93
Amount of interest...................................... 14,329 72

Total..............$37,271 65
Deduct commissions of tutrix........................$1,432 97
Deduct for minor's education and support............... 2,598 00
———— 4,030 97

Balance (reliquat de tutelle)......................$33,240 68
Interest on said balance, at 5 per cent. from 20th December, 1852, to
2d April, 1853, date of Sheriff's sale......................... 461 75

Total..............$33,702 43
Deduct proceeds of Sheriff's sale.............................. 18,984 09

Balance due 2d of April, 1853.................$14,718 34
Interest on said balance from April 2d, 1853, to Oct. 24, 1854..... 1,125 34

Total..............$15,843 68

Due on account of tutorship, capital and interest, on the 24th of October, 1854, the day that the intervenor settled in full with plaintiff, and took a subro-

FUSELIER
*v.*
BABINEAU.

gation of her rights against her co-surety, the defendant, (from the preceding page,) .................................................................... $15,843 68

| | |
|---|---:|
| Of which half was due by defendant to intervenor, in consequence of such payment, say....................................................... | $7,921 84 |
| Of which was interest as above................................. | 562 67 |
| And capital............................................... | $7,359 17 |

| | |
|---|---:|
| The defendant is entitled to be credited on the above interest of by the half of the proceeds of slave *Kitty* and some land sold under | $562 67 |
| execution in January, 1855, and March, 1856, for $479 79, say.. | $239 89 |

| | |
|---|---:|
| Balance of interest due by defendant............. | 322 78 |
| Balance of capital bearing interest............. | 7,359 17 |
| Total................ | $7,681 95 |

It is, therefore adjudged and decreed, that the judgment of the District Court, as regards the plaintiff and appellant, *Bazile Fuselier*, be affirmed; that as regard the appellant, *Julie Gradnigo*, intervenor, it be reversed; and that said *Julie Desirée Bauvais*, wife of *Hilaire Gradnigo*, recover of *Joseph D. Babineau*, the defendant and appellee, the sum of seven thousand six hundred and eighty-one dollars and ninety-five cents, with interest at the rate of five per cent. per annum on seven thousand three hundred and fifty-nine dollars and seventeen cents of said sum, from the 24th of October, 1854, until paid, and costs of the District Court since (and including) the intervention filed herein, by the said *Julie Gradnigo*. And it is further decreed, that the plaintiff, *Basilie Fuselier*, pay costs of the District Court previous to the filing of *Mrs. Gradnigo's* intervention; and that the costs of appeal be borne, one-half by plaintiff and one-half by defendant.

VOORHIES, J., recused himself on account of relationship to one of the parties in this cause.