## No. 11,264.

WILLIAM H. STUART ET ALS. VS. W. W. SUTCLIFFE ET ALS.

A policy of life insurance made payable to the assured, his executors, administrators and assigns, is, in law, assignable as any other incorporeal right. Such a policy does not constitute an asset of the "succession of a living person and become amenable to the denunciation of R. C. C. 2454."

APPEAL from the Civil District Court, Parish of Orleans. *Monroe, J.*

---

*Joseph Brewer, Girault Farrar, H. L. Dufour* and *H. J. Delesdernier* Attorneys for Plaintiffs and Appellants:

1. Where a partnership styled "John Klein & Co." was dissolved by the death of one of its members in 1888, and shortly afterwards a new firm was formed under the same firm name, composed of different individuals, the firms are not the same, nor are the assets and liabilities of the first firm the assets and liabilities of the second firm. 19 An. 289; Abat, Generes et als. vs. Mrs. Emeline J. Penny et als.

2. Where a member of the second firm who was also a member of the first firm assigns to the second firm his policy of life insurance to secure a debt due the first firm, such assignment is null and void.

3. Where a member of a firm executes his promissory note in favor of said firm and pledges or assigns a policy of life insurance, to secure the payment of said note, said pledge or assignment is personal to said firm, and said policy can not be subsequently assigned by said firm.

4.  Where a member of a firm executes his note in favor of said firm and pledges a life insurance policy to secure said note and authorizes the firm to pledge said policy, but said firm assigns said policy instead to a third person, such assignment is null and void.
5.  An assignment of a life insurance policy to be valid must be signed by the person assured.
6.  A life insurance policy is not negotiable.
7.  A pledge can not be separated from the note to which it is attached, for if the note be worthless the pledge would be invalid.

*Carroll & Carroll* for Defendants and Appellees:

If the assured legally and properly assign a policy of insurance for value and in good faith, neither his heirs nor executors can ignore such assignment, or set it aside, on the ground that it is in contravention of Art. 2454, C. C. An insurance policy so assigned can not in any sense be construed as the succession of the deceased, the sale of which is prohibited. Compare Bliss on Life Insurance (Secs. 3 and 325 to 356) with Civil Code, Arts. 871 *et seq.*

One who has effected insurance on his life may assign the policy, or a part of it, to a *bona fide* creditor. 11 R. 298.

Transfers and assignments of insurance policies have often been considered by our Supreme Court and have always been dealt with as perfectly valid and proper. There is not the faintest intimation or suggestion that such assignments are contrary to good morals, or against the law. 11 R. 298; 13 An. 508; 14 An. 1; 26 An. 326.

*Howe & Prentiss* Attorneys for Mutual Life Insurance Company of New York, Defendant and Appellee.

The opinion of the court was delivered by

WATKINS, J.    This suit is prosecuted by the executors of William Stuart, deceased, for the recovery of a policy of insurance in the Mutual Life Insurance Company of New York, for the sum of $3000, and its dividends and avails, which risk had been taken on the life of the deceased, and which, it is alleged, by its terms and by operation of law, is made payable to the heirs and legatees of the deceased; and, as such, is an asset of his succession—the present value of same aggregating at date of the death of Stuart $9215.

Plaintiffs allege that the policy is in the possession of either W. W. Sutcliffe or John Klein, who claim the right to collect from the life insurance company, but they aver that their claim is unfounded, and that the demands set up by them against Stuart are void and of no effect or validity. That said policy being an asset of Stuart's succession, no assignment or transfer thereof, whether made by said

16

Stuart during his life, or by any other person, is valid, because same was in contravention of the prohibitory terms of Art. 2454 of the Civil Code; and further, that the pretended assignments under which the said Klein and Sutcliffe claim to hold said policy were made without any consideration, and same were in violation of the rights of the forced heirs of said Stuart—said executors being the sole surviving issue of the deceased, who have accepted his succession with the benefit of inventory.

Upon appropriate averments and prayer a sequestration was ordered, and the policy taken into legal custody; but subsequently the indebtedness of the company was ascertained and the amount fixed at $9215, which was paid over to the sheriff, under orders of the court, to await the result of this litigation.

Klein, in his answer, avers that William Stuart, at the time a member of the partnership of John Klein & Co., which was composed of Klein, Stuart and Mrs. Widow George H. Shotwell, did, for a valid and adequate consideration, make and deliver to said partnership his certain promissory note, dated May 10, 1889, payable one year after date, for the sum of $4000, to the order of said partnership, and that to secure the payment of said note Stuart pledged and assigned to John Klein & Co. said policy of insurance, and at the same time authorized said partnership to pledge the same to any future holder.

That, on the 31st day of July, 1889, said Stuart did execute his promissory note to the order of said partnership for the sum of $2000, and in order to secure the same he further pledged and assigned said policy of insurance, and authorized said partnership to pledge the same.

He further avers that since the execution of said notes they were discounted, and the proceeds thereof placed to the credit of Stuart on account on the partnership books, and that, since that time, various transactions have taken place *pro et con*, consisting of credits to and charges against Stuart, and that, as matters now stand, his net indebtedness aggregates the sum of $5763.55, with 6 per cent. interest thereon from June 30, 1892, which amount may be diminished or increased on final liquidation of said partnership; and the right is reserved by John Klein & Co. to claim any such additional sum as may be found due on final settlement.

He further represents that the plaintiffs have no rights or claims,

except as standing in place of, and as representing the deceased, and that said credits on the books of the partnership in favor of Stuart, as well as the loan from Sutcliffe to said partnership, were lawfully made on the faith of the pledge of said policy of insurance, and that its pledge and assignment were made for a good and valuable consideration, and in perfect good faith; and that the deceased had the full benefit of the sums of money that were advanced by Klein & Co. to him, and by Sutcliffe to Klein & Co., and neither the deceased nor his heirs, or legal representatives, could legally demand the restitution of said policy, or of its avails, without first paying or restoring the amounts thus received—for all of which Stuart was responsible, personally, and as a member of the firm.

His prayer is that the demands of Klein & Co. and Sutcliffe be recognized and enforced.

The answer of Sutcliffe is that on the 13th of March, 1890, he loaned John Klein & Co., through William Stuart, a member of that partnership, the sum of $5000, for which it gave its promissory note, payable to his order one year after date; and that in order to secure payment of same, said partnership pledged to him, as collateral security, the policy of life insurance above mentioned—said note being from time to time renewed upon payment of interest.

That the said note is still unpaid, and that he is entitled to retain said policy or its proceeds now in the possession of the court, in their entirety, and apply the same to the satisfaction of said indebtedness, capital and interest—specially denying the plaintiffs' legal right to a sequestration, and praying for its dissolution.

In a supplemental petition plaintiffs alleged that for many years antecedent to his death, William Stuart was in very bad health, partially blind, and unable to transact business; and that, by reason of his physical infirmities, Klein obtained undue influence and control over him, and thus obtained from him the pledge and assignment of said policy of insurance through imposition and false pretenses, from the effect of which petitioners, as his legal representatives are entitled to be relieved, and to have said pledge and assignment set aside and revoked, and the policy and its avails restored to their possession and control.

To this petition the defendant Klein pleads a general and special denial.

Upon the issues thus formulated a general judgment was rendered

in favor of the defendants which is couched in the following terms, to-wit:

" It is ordered, adjudged and decreed that there be judgment in favor of the defendants and against the plaintiffs, rejecting their demand and dissolving, setting aside and quashing the writ of sequestration issued herein, at the costs of the plaintiffs; and, inasmuch as during the pendency of these proceedings, the policy of insurance issued by the Mutual Life Insurance Company of New York, on the life of William Stuart, sequestered herein, has become due and payable, and the amount due thereunder, say the sum of $9215, has been paid over to the civil sheriff, and as said sum is in excess of the claims and debts set up as being secured by pledge and assignment of said policy, it is further ordered, adjudged and decreed that the pledge and assignment made to and in favor of the defendant, W. W. Sutcliffe, be recognized and enforced, and accordingly that out of said sum in the hands of the sheriff the said defendant, Sutcliffe, be paid the sum of $5000, with interest at the rate of 6 per cent. *per annum* from September 16, 1891, until paid, by priority and preference over all parties whatsoever; that the sheriff retain in his hands a sum which, when added to the amount to be paid said Sutcliffe as above provided, will make the total sum of $5763.55, with interest thereon at the rate of 6 per cent. *per annum* from June 30, 1892, up to the date upon which payment shall be made to said Sutcliffe as above provided; that said sum be so retained until the liquidation and settlement of the business and affairs of the partnerships of John Klein & Co. shall be effected, or until the appointment of a liquidator of said partnerships, and until the further order of this court; that the balance of the amount in the hands of the sheriff be paid over to the plaintiffs, William H. Stuart, Charles D. Stuart and Frank P. Stuart, executors of the late William Stuart; that, as to the claims of John Klein and Mrs. Sarah L. Shotwell, as members of the partnership of John Klein & Co., for and on behalf of said partnership against the plaintiffs and the succession of William Stuart, and as to the alleged transfer, assignment and pledge by William Stuart of the policy of insurance sequestered herein to said John Klein & Co. to secure said claims, the rights of all parties be reserved, to be determined and settled on the final liquidation of said partnership; that the right of the plaintiffs and the succession of William Stuart be reserved to claim and receive, on the final settlement of the business

and affairs of said partnerships of John Klein & Co., full and proper credit for the amount to be paid to the defendant, W. W. Sutcliffe, under this judgment; or such part thereof as should be properly so credited; that the Mutual Life Insurance Company of New York be released and discharged from any and all further liability under said policy of insurance; and that the plaintiffs pay all costs of these proceedings."

It is from this judgment that the plaintiffs have appealed; and, in this court, the defendants have respectively made answers to the appeal, which, in effect, request such amendments as will conform the decree of this court to the demands of their original answers.

The foregoing synopsis of the pleadings and issues of the case resolves the controversy into the following propositions, viz.:

1. That the policy of insurance by its terms, as well as by operation of law, is payable to the heirs and legatees of William Stuart, and as such, same is an asset of his succession, and no assignment or transfer, whether made by said Stuart during his life, or any other person, is valid, because same is in contravention of the prohibitory terms of Article 2454 of the Civil Code.

2. That the pretended assignments under which Klein and Sutcliffe claim, were made without consideration, and in violation of the rights of the forced heirs,

3. That by reason of the physical infirmities and partial blindness of the deceased, John Klein obtained over him an influence and control which he could not have obtained had the deceased been in good health and in the possession of his eyesight; and that the assignment was procured by said Klein from Stuart by imposition and under false pretences.

I.

Referring to the policy, we discover that it contains the following stipulation, to-wit:

"And the company do hereby promise and agree to and with the said assured, his executors, administrators and assigns, well and truly to pay, or cause to be paid, the said sum insured *to the said assured, his executors and administrators, or assigns*, within sixty days after due notice," etc.; while the claim of the plaintiffs is that, "by its terms and by operation of law, it is payable to the heirs and legatees of the deceased," whom they personate; and "said policy being an asset of the succession of William Stuart, the assignment

thereof was in contravention of the prohibitory terms of Article 2454 of the Civil Code.''

Plaintiffs do not make claim as beneficiaries of said policy, but as the executors and heirs of deceased; hence, for all purposes of this case, the plaintiffs occupy exactly the same situation as that occupied by the deceased, and can invoke no other cause of nullity than such as he could have urged while living. And it is evident that Stuart had no succession in the ordinary acceptation of the term while living, and his heirs had no inheritance.

The denunciation of Article 2454 of the Code is directed against the sale of the *succession of a living person*, which it declares not to be the subject of sale; evidently because such a sale would, in the very nature of things, be prospective and uncertain; the law declaring that '' succession is the transmission of the rights and obligations of the *deceased* to his heirs.'' R. C. C. 871, *et seq*.

But the prohibition contemplates a sale of an entire succession; or, in other words, the sale of all that the vendor *may* own at his death. It does not purport to prohibit the sale of any single, isolated piece of property that an individual may own, such as a policy of life insurance, although it might happen to be all the property he possessed at the time; and the case would not be altered, if it should transpire that he afterward acquired no other property. To place upon the article the construction contended for by counsel would be to render it impossible for an individual to do as he pleased with his own.

There is no force in this contention and it was properly rejected in the court below.

## II.

In so far as the consideration of the pledges and assignments of the policy of insurance from Stuart to John Klein & Co., and from the latter to Sutcliffe, are concerned, the proof is clear and uncontradicted to the effect that it was freely and voluntarily done on the part of Stuart, and for a fair and adequate value received in one instance, and by his procurement and instrumentality in the other.

There is neither proof nor plausible suggestion of the truth of the charge, that the pledge and assignment of the policy was obtained by Klein by means of undue influence or under false representations.

This court has for many years maintained the assignability of such

policies of insurance, as that of an incorporeal right.   Succession of Risley, 11 R. 298.

The Succession of Richardson, 14 An. 1, involved quite a similar question to the one raised here—the court giving effect to an assignment made by the deceased, contemporaneously with its issuance. Summers vs. United States Insurance Company, 13 An. 504.

. But in the case of Succession of Hearing, 26 An. 326, the question of the assignability of policies of insurance was expressly announced.   In that case it is stated by the court that one of the policies was on the life of another man, that was transferred by the assured to Hearing and by him transferred to his wife. ˙Of this transaction they say:

"A man may take out a policy of insurance on his life in the name of any one; or having taken it out in his own name he may, with the consent of the assurers, transfer it to whom he pleases."

We are in accord with that opinion, and it is decisive of the present controversy.   But the doctrine therein announced is, in this respect, clearly contradistinguished from the principle announced as that applicable to a policy issued in favor of a wife or child as beneficiary; for on that question the court is clear and explicit.   "A husband," say the court, " has the right, we think, to insure his life in the interest of his wife and child as well as in the interest of his creditor, and his obligation to provide for them in case of his death is certainly well recognized.   If the policy issues to the wife, or is properly transferred to her, the amount stipulated therein belongs to her when the event insured against happens, and she can not be forced to inventory it as a part of her husband's estate.   The object he had in view would be defeated if a contrary doctrine prevailed."

To the same effect is Succession of Boffinschen, 29 An. 711.

The whole question underwent a thorough and careful examination in the recent case of Putnam vs. Insurance Company, 42 An. 739, and in which we said, on reason and authority, that—

"As to her [the wife] the company's contract was complete in its incipiency, and never changed thereafter with her consent.   In law this policy inured to her separate paraphernal benefit, though not separate in property from her husband, the insured, and its character of paraphernal property could not be changed to that of separate property of the husband or that of the community, without her consent, lawfully obtained.   As such it could not be placed as

security for the husband's debts. To this effect are many authorities." Succession of Kuglen, 23 An. 455; Pilcher vs. New York Life Insurance Company, 33 An. 322.

The foregoing authorities make it quite clear that Stuart had the right to pledge or assign the policy in controversy, and the evidence makes it equally clear that he did pledge and assign it to the firm or partnership of John Klein & Co., and that said firm did subsequently pledge and assign it to Sutcliffe. Consequently the rights of the forced heirs of Stuart are not affected thereby and they are without interest to complain.

### III.

With regard to the charge that on account of Stuart's physical infirmities and partial blindness, Klein obtained undue influence over him and thus procured his assent to the pledge and assignment by means of imposition and false pretences, there is no proof whatever. Klein, as witness, denies it *in toto*. As Stuart was aged and infirm this was doubtless a stroke in the dark, predicated on mere conjecture.

Our examination of the law and evidence has thoroughly satisfied us of the correctness of the judgment.

Judgment affirmed.