The opinion of the court was delivered by
Watkins, J.
Plaintiff, a married woman, sues her husband for a dissolution of the matrimonial community, a separation of property, the recognition of her separate property, and her right of administration thereof, grounded on his insolvency and the generally disordered condition of his financial affairs, endangering her paraphernal rights and claims as well as her future acquisitions.
The property petitioner claims is specified, as well as the sources from which same were derived; and the various items of indebtedness of her husband are enumerated, and the resulting balance due is fixed at one thousand four hundred and sixty dollars, for which she demands a personal judgment.
Several of the defendant’s judgment creditors intervened and resisted plaintiff’s demands, denying her paraphernal ownership of the property claimed and the reality and validity of the indebtedness she prefers against her husband, charging same to be fictitious and fraudulent, and the act of restitution, by defendant to his wife, of the property claimed as a part of a scheme on the part of the defendant to defraud his creditors and put his property beyond their reach.
The defendant made default.
On these issues the case was tried, and judgment pronounced in favor of plaintiff for the sum of one thousand and sixty-six dollars, dissolving the community, decreeing her the owner of the property specified in her own paraphernal right, and giving her the separate administration and control of same, and from that judgment the interveno^s have appealed.
It is evident that in this case, as well as all others • of its kind, the principal question is whether the plaintiff had a valid subsisting debt or demand against her husband. ■ If she had, the defendant was entitled to convey to her property in partial satisfaction of it, as he did, and she is entitled to judgment for the resulting balance. Otherwise *1217 the charges of unreality and fraud are substantiated, and the judgment must be reversed and a decree pronounced in favor of intervenors.
The issues before us are identically the same as they were' in the court below, with the exception that the moneyed demand of the plaintiff is restricted to one thousand and sixty-six dollars, as that is the amount for which judgment was- pronounced in her favor, and she has not answered the appeal and demanded an alteration of the decree.
The following are the items of defendant’s indebtedness as recited in the act of restitution and reiterated in plaintiff’s petition, viz.:
1. The sum of two hundred dollars, which was paid to the defendant as the one-third of the purchase price of the plantation known as the Indian Village place, to which the plaintiff was entitled as an heir of her deceased father, John A. Oovington.
2. The sum of four hundred and sixteen dollars, which was likewise paid to the defendant as the one-third of the purchase price of the plantation known as the Lowery place, to which plaintiff was entitled as heir.
8. The sum of four hundred dollars, which was likewise paid to the defendant as the one-third of the price of certain mules, stock of cattle, sheep, etc., which were disposed of and to which plaintiff was entitled as heir.
4. The sum of one thousand two hundred and fifty dollars, which was likewise paid to the defendant, as the proceeds of certain policies of life insurance which had been compromised and surrendered, to which plaintiff was entitled as assignee.
Olaim is made for the first three amounts as having been derived from the sale of property of the plaintiff’s father’s succession, made by his legal heirs and surviving widow, and of which plaintiff was and is beneficiary to the extent of one-third, on the following theory:
That during his lifetime John A. Covington acquired sundry small pieces of improved real estate, situated in the vicinity of the place where he conducted a mercantile business which was operated in the name of John A. Covington & Son. That J. A. Covington was twice married, and of the first marriage the plaintiff and her brother, J. Y. Covington, were the sole surviving issue at his death; and of the second marriage there was no issue — his second wife surviving him.
*1218 Of the various properties which J. A. Oovington purchased, some were acquired during the second, but the greater part during the first community; consequently, the three parties in interest agreed among themselves to make a division of the effects of the deceased on the basis of one-third to each; and hence, when a piece of property was sold, one-third of the proceeds was delivered to each — the share falling to the plaintiff being delivered to her husband, the defendant.
After his father’s death, J. Y. Oovington, the son and partner, continued to operate the mercantile business as before, to pay its debts and wind up its affairs — -there having been no formal administration of the succession — and the heirs taking unqualified control of the property and affairs of deceased as their own, as an inheritance, without objection or complaint |¡>y creditors.
The intervenors, however, insist that J. A. Oovington was largely indebted at the time of his death, and, consequently, there was nothing remaining in his succession for his children to inherit, and they had no inheritance.
There is in the record no proof of J. A. Covington’s indebtedness at time of bis death, except the statement that J. Y. Oovington made as a witness in another suit, to which thé plaintiff was not a party, or a privy. And as she urges the objection that it was res inter alios aeta, we must decline to consider the evidence, as the objection was undoubtedly good and should have been sustained by the judge a quo.
But if the proof be as intervenor’s counsel insist it is, it could not affect the question, for the reason that by the simple and unconditional acceptance of J. A. Covington’s succession by his heirs, and the appropriation and sale of its property and effects, the succession is no longer in esse, it becoming absorbed by the heirs. In addition, J. Y. Oovington took charge of and subsequently conducted the mercantile business of J. A. Covington & Son, and liquidated its affairs and presumably settled its debts. At least it is reasonable to suppose that they have been settled, as we hear of no complaints, suits or judgments by his creditors, and the heirs have peaceably taken possession of his property, sold it, and divided its proceeds. Under these circumstances we think we are not at liberty to entertain a doubt of the reality and validity of the plaintiff’s inheritance from her father.
As to question of fact, we are of opinion that there is just as little *1219 doubt as to the amount plaintiff was entitled to have received on the score of the sale of the Indian Village and Lowery places; but as to the four hundred dollars she claims on the score of stock, etc., sold, we can not express our opinion, inasmuch as the District Judge rejected that item and plaintiff asked no amendment of his judgment.
In regard to the second item the proof is clear to the effect that the sum.of four hundred and sixteen dollars yas delivered into the possession of the defendant for the plaintiff; and there is no proof that the money was afterward returned to her. But in regard to the first item the proof is not quite clear. The party who made the purchat e of the Indian Village property states that he paid five hundred dollars in cash to J. Y. Covington in two different payments, and gave his note for the balance of one hundred dollars; and that neither the plaintiff nor the defendant was present at the time. Covington rather confuses the matter in his statement by making an explanation of the two transactions at the same time; but he substantially declares that he “paid one hundred and fifty dollars of that which Bransford received.” And, taking this statement in connection with that of Parker, it becomes reasonably certain that the defendant did receive this one hundred and fifty dollars, which is fifty dollars less than the sum allowed by the judgment appealed from.
The transaction with regard to the life insurance policies was substantially as follows, viz.:
J. Y. Covington being somewhat embarrassed financially obtained a loan of money upon the endorsement of two friends to the extent of about eight thousand dollars, and as collateral security he assigned to them two policies of life insurance for two thousand five hundred dollars each.
Having subsequently returned the money borrowed, the pledgees transferred the policies to the plaintiff at the request of the beneficiary, her brother.
Eor reasons of his own, which were not disclosed, the agent opened communication with the plaintiff as assignee with a view of compromising the risk and recalling the policies. This negotiation was attended with some difficulty and delay.
Of this the agent says:
“I then called upon Mr. Bransford, made known my business to him, and offered to pay Mrs. Bransford the amount of the premiums *1220 paid with interest, if she would surrender the policy. The matter was submitted to her and declined. During the next six or eight months I made her, through her husband, four or five offers. Finally, I offered to pay her one thousand dollars for the remainder of the policy. Every offer (was) in turn declined (and) in the meantime one or two half-annual premiums were paid. During the last week in February, 1893, Mr. Bransford called me in his store and said that he was hard pressed for money, etc., and that if I would pay one thousand two hundred and fifty dollars for the policies, that he was of opinion he could induce his wife to sell them.
“I submitted the offer to the company (and it) was accepted.
if: i,’; # :¡¡ H*
“I then wrote out a receipt for Mr. Bransford to send to Mrs. Bransford to sign, and drew my check No.' 15* on the Capital State Bank, at Jackson, Mississippi, payable to my own order, and left it with Mr. F. P. Stubbs to deliver to Mr. Bransford upon the delivery of the policy and receipt signed by Mrs. Bransford. In a few days the receipt was received, * * * and upon the receipt of the policies and premium receipts I handed Mr. Bransford my check No. 15 before mentioned amounting to one thousand two hundred and fifty dollars.”
It thus appears that not only were the policies duly assigned by Covington’s pledges to Mrs. Bransford, at his request, but the insurance company recognized her as the legal assignee of them, and, as the result of an eight months’ negotiation with her, purchased them from her and paid her one thousand two hundred and fifty dollars for them, giving the agent’s check to the defendant.
The president of the Ouachita National Bank states that he recollects the check and that same was collected through his bank for account of J. S. Bransford; and that the proceeds were placed to the credit of his account and drawn out again on his checks at different times.
The averments of intervenor’s petition with reference to these insurance policies are that defendant “ never owed his wife anything on account of his insurance policy. That Bransford paid the premiums on said policy, and whatever accrued thereon was the result of a contract made during the community, and belonged to the community. They further specially deny that defendant received any cash or property,” etc.
*1221 The theory of intervenors is manifestly incorrect. The policies were issued in favor of J. Y. Covington and were payable to him or his assigns. Either he or his pledgees paid the premiums. After the demands of his pledgees had been satisfied and they had been reimbursed the amount of the premiums they had paid, the policies were at once assigned to Mrs. Bransford at Covington’s request. He swears to this as a witness.
There is neither allegation or proof of any fraud or simulation in the transaction on the part of Covington. He was not made a party to this suit, and no attempt was made to annul the assignment of the policies to Mrs. Bransford on any ground. Covington owed the intervenors nothing, and, being an unmarried man, without nearer kindred or heirs than his sister, he had a perfect legal right to transfer the policies to her as he did. And it was near eight months, subsequently, that she sold them to the company and her husband received the money.
But our attention is attracted to the fact that the proof discloses that at the time of these transactions J. Y. Covington had a latent interest in the defendant’s business — having from time to time loaned him money to be employed in his business; and consequently when Bransford collected the one thousand two hundred and fifty dollars from the insurance company and cheeked it out of bank for the benefit of his firm, same enured to Covington’s benefit also. But that is a non sequitur, for if Bransford was indebted to Covington for advances of money his disbursement of the one thousand two hundred and fifty dollars among other creditors did not benefit Covington nor reduce the amount of his claim. Certain it is that no part of the one thousand two hundred and fifty dollars was paid to Covington and the proof shows that Bransford subsequently sold his entire stock of goods for about five thousand dollars in cash, and out of the proceeds of sale he paid Covington about one thousand five hundred dollars in full of his claim — assuming all of the liabilities of the mercantile business.
If there is anything in these transactions, which even tends to show fraud or simulation, or an interest in the community, it is not discoverable.
• To our minds the proof of the paraphernal character of the plaintiff’s claim to the insurance money is just as clear and as free from doubt as the claims which arose out of her inheritance from her father’s succession.
*1222 In Stauffer, Macready & Co. vs. Morgan, 39 An. 632, the identical question under consideration was examined and decided. In that case the creditors of the husband attached property standing in the name of his wife, as that of the community, and she intervened, claiming that it was her separate, paraphernal property — having been purchased with her separate means, under her administration and control.
The principal question was as to the paraphernality of the funds with which the wife’s alleged acquisition was made, and the controversy chiefly turned upon the question, whether there was an actual, completed donation of a check, which the groom gave to his fiancé, on a New York bank, just prior to their marriage — the attaching creditors denying the effectuality of the donation, and the intervenor affirming it.
The court said: “Granting the correctness of the proposition of law (contended for by plaintiff’s counsel), we are satisfied that the presentation of the check to the firm on which it was drawn, and the placing of the proceeds, under her instructions, to her credit, was an effective collection of the check and a reduction of the proceeds to her possession” — thus completing the donation by a manual delivery of the proceeds and avails of the check.
So, in this case, the donation of the insurance policies was perfected by their surrender to the company and then payment of the price to her husband upon her receipt.
The assignability of such a policy of insurance as that under consideration is instanced by the current and weight of authority in this State. Succession of Hearing, 26 An. 326; Succession of Bofenschen, 29 An. 711; Putnam vs. Insurance Company, 42 An. 739; Pilcher vs. Insurance Company, 33 An. 322.
And in the recent case of Stuart vs. Sutcliffe, 46 An. 240, all of the authorities are collated, reviewed and the doctrine reaffirmed.
From the foregoing summary of law and fact it follows that the plaintiff’s title to the property is supported by a good and valid consideration and was properly recognized by the judgment appealed from; that there was a valid and subsisting indebtedness on the part of the defendant to the plaintiff in excess of the estimated value of the real estate, to the amount of one thousand and sixty-six dollars, as specified in the judgment, less the sum of fifty dollars as we have ascertained from the evidence, and by which amount it should be re *1223 duced; aud that, on account of business complications and his suspension of business, and the general disorder of his affairs, the plaintiff is entitled to a separation of property, the dissolution of the matrimonial community and the control, management and administration of her separate estate and property. R. C. C. 2425.
The judgment should be amended and affirmed.
It is therefore ordered and decreed that the moneyed judgment appealed from be amended and reduced in amount by the sum of fifty dollars, and as thus amended the entire judgment be affirmed and the cost of appeal taxed against the plaintiff and appellee.