(33 South. 368.)

No. 14,262.

Succession of EMONOT.*

(Dec. 1, 1902.)

SUCCESSION OF MOTHER — LIFE INSURANCE POLICY—AUTHORITY OF TUTOR—SURVIVING HUSBAND—USUFRUCT—ACCOUNTING BY TUTOR—APPEAL—REMAND.

1. The proceeds of a policy of insurance taken out on the life of a mother in favor of her minor daughter inure to the daughter, form no part of the succession of the mother, and cannot be used to pay its expenses.

2. A tutor who, acting upon his own authority, accepts upon a good claim less than the amount due his ward, is liable for the difference.

3. The surviving husband of a woman who dies leaving a child by a former marriage and no children by her marriage with him has no right of usufruct with respect to her estate, whether paraphernal or in community.

4. Where a surviving husband appears in court, and alleges the death of his wife, and that she left a child by a former marriage as her sole heir, and, producing witnesses who swear to the truth of his allegations, causes himself to be appointed tutor of the child, and put in possession of her estate, and thereafter

*Rehearing denied January 19, 1903.

holds the same, and, after 10 years files an account of his gestion as tutor, without at any time questioning the legitimacy of his ward, he will not be heard to do so merely by way of defense to an attack upon the correctness of the account filed.

5. Where the interests of justice require it, this court will remand a case in order to afford an opportunity for the introduction of further evidence.

(Syllabus by the Court.)

.Appeal from civil district court, parish of Orleans; John St. Paul, Judge.

In the matter of the succession of Emma M. Emonot, wife of John Carney. On the accounting of the tutor the minor, as opponent, appeals. Modified.

W. Alexander Bahns and Lievén De Poorter, for appellant. Richard & Vidrine, for appellee.

### Statement of the Case.

MONROE, J. It appears from the record that John Carney was married in New Orleans, under the regime of the community, August 11, 1888, to Emma Marceline Emonot, who died January 8, 1892. In his petition opening her succession, filed January 29, 1892, he alleges, that:

"Emma M. Emonot, widow of Gregory Espinola, and late wife of petitioner, departed this life; * * * that the said deceased left no children by her marriage with your petitioner, and that her sole heir is her daughter, Alice Emonot, the sole issue of decedent's marriage with Gregory Espinola, as aforesaid; * * * that said decedent died intestate, and that her said daughter, Alice, is a minor, about nine years of age,—all of which will fully appear from the annexed affidavits of John E. Caster and Benjamin Wooster, which are made part hereof," etc.

He prays that an inventory be taken, that the minor be recognized as the sole heir of her mother, and that a family meeting be convened to recommend a tutor. The affidavits, made part of the petition, recite, as to each of the affiants, "that he was personally acquainted with the deceased, Emma M. Emonot, late wife of John Carney, formerly wife of Gregory Espinola, and that his said acquaintance extended over many years; that it is to affiant's own personal knowledge that said decedent was married but twice, and as above stated; that she had no chil-

dren by her marriage with said John Carney; and that the sole issue of her prior marriage with said Gregory Espinola was a daughter, now about nine years of age, known to affiant as Alice Espinola."

Agreeably to the order made on this petition, an inventory was taken of the property of the succession, showing a few articles of furniture, the separate property of the decedent, valued at $29.50, to which were added, as belonging to the minor, a policy of insurance in her favor on the life of her mother, for $1,000, appraised at its face value; and a family meeting was held, which recommended the surviving husband for the dative tutorship, and thereafter, upon his petition, another inventory was taken, and he took the oath and received his letters. Both of these inventories are signed by Carney, and contain the declaration that his deceased wife was the widow of, and that the minor is the only child of her marriage with, Espinola. No account was rendered by the tutor so appointed until September, 1901, when he filed a petition, presenting his final account, and praying that his ward, who had, in the meanwhile, been emancipated, be cited to show cause why it should not be homologated. This account shows:

To the debit of the tutor:

| | |
|---|---|
| Amount realized from life policy in favor of minor, after deducting 8%, to obtain immediate payment | $ 920 |
| Separate property of the mother | 29 |
| | $ 949 |
| Interest thereon | 444 |
| Total | $1,393 |

To his credit:

| | |
|---|---|
| Board and tuition St. Mary School from January 18, 1892, to May 19, 1896, 52 months, @ $10 a month | $520 |
| Same school, for books | 26 |
| Board and tuition Sisters of Mt. Carmel from May 19, 1896, to January 24, 1897, @ $10 per month | 90 |
| Same school, for books | 11 |
| Costs and charges succession of Emma Emonot | 70 |
| Funeral expenses succession of Emma Emonot | 55 |
| Incidental expenses connected with funeral | 20 |
| Furniture to be delivered in kind | 29 |
| Board, lodging and clothing from January 24, 1897, to December 25, 1899, @ $10 per month | 230 |
| | 1,051 |
| Balance due minor | $ 342 |

The minor opposes this account, and claims:

(1) That the tutor was without authority to receive less than was called for upon the face of the insurance policy, and that he owes a penalty of 5 per cent. for failure to invest same, and 5 per cent. interest thereon from January, 1892.

(2) That he is liable for furniture valued at $300, a grocery store valued at $500, and jewelry valued at $50, which her mother owned prior to the marriage.

(3) For an undivided half interest in a grocery store owned by the community when her mother died, and valued at $3,000.

(4) For an undivided half interest in certain lots of ground owned by the community, and in the revenues derived therefrom.

(5) That the funeral and succession charges have been improperly deducted from the proceeds of the life policy, which formed no part of the succession of her mother.

(6) That the items charged for the tuition and books cannot be deducted from, or pleaded in compensation of, the penalty due for failure to invest said proceeds.

After the filing of this opposition the tutor presented an amended account showing:

To his debit:

| | |
|---|---|
| ( 1) Amount collected on life policy in favor of minor | $ 920 00 |
| ( 2) Interest on $420 thereof at 5% from 1892 to October 15, 1901 (no amount). | |
| ( 3) Separate property inventoried at | 29 00 |
| ( 4) One-half interest in lots 7 and 10, squares 530 and 516, not inventoried or appraised (no amount). | |

To his credit:

| | |
|---|---|
| ( 1) Paid to St. Mary's School, as per vouchers | $ 546 00 |
| ( 2) Paid to Mt. Carmel School, as per vouchers | 101 00 |
| ( 3) Board and lodging January 24, 1897, to December 25, 1899 | 230 00 |
| ( 4) Paid undertaker, funeral expenses Mrs. Carney | 75 00 |
| ( 5) Costs and charges settling succession | 70 00 |
| ( 6) Dr. Kelly, medical services last illness | 30 00 |
| ( 7) Hotel Dieu, Med., last illness (no amount). | |
| ( 8) Paid debts due by decedent before marriage | 68 |
| ( 9) Paid for taxes, insurance, and repairs on real estate (no amount). | |
| (10) Cost of cottages built on lots 7 and 10, after dissolution of community | 1,200 00 |
| (11) Separate funds brought into community | 1,000 00 |
| (12) Attorney's fees for this account | 100 00 |
| (13) Costs of court, this account (expended and reserved) | 50 00 |
| (14) Paid Smith Bros. & Co., community debt | 300 00 |
| (15) Paid other creditors of community | 500 00 |
| (16) Interest due accountant (no amount). | |
| (17) Commission due accountant (no amount). | |

The tutor also filed a motion to strike out certain items included in the opposition of the minor, and somewhat later a pleading in which he alleges that his deceased wife was never married to Gregory Espinola, and that when the minor was conceived said Espinola was the husband of another woman; that the allegation made by him in his petition for tutorship was made in error; that he acted in error in recognizing the legitimacy of the minor in filing his account; and praying that evidence be received as to her status.

The motion to strike out was denied, and objections (made on the ground that the tutor was estopped) to evidence offered in support of the other motion were considered as going to the effect. It further appears that a few weeks prior to his marriage with the mother of the minor (August 11, 1888) Carney had rented to her a house owned by him on the corner of Poydras and Galvez streets, in which she contemplated keeping a grocery; but that, instead of carrying that plan into execution, he raised $1,000, with which he purchased the stock for the grocery, and that he then married his tenant, and thereafter himself carried on the business until November 20, 1891, when he sold it to Angelo Cetti for $700, cash, the purchaser becoming also the lessee of the premises.

It further appears that in October, 1889, pursuant to an adjudication which had been made to him by the state tax collector in June, Carney obtained title to lot 10 in square 516, and, pursuant to a similar adjudication, made earlier in the same month (October), he obtained title to lot 7 in square 530, and that just prior to, or about the time of, the sale of the grocery to Cetti, he began the erection, upon the lots so acquired, of two double tenement cottages, which are said to have been completed shortly after the death of his wife, January 8, 1892, part of the cost having been paid before and part after her death, but the relative proportion not being shown. It further appears that at a somewhat later date—perhaps two years—another house, fronting on Lafayette street, was built on one of the lots, and paid for in part from the rentals collected from the other houses. Returning to the date of the marriage, it appears from Carney's testimony that Mrs. Espinola owed him a few weeks' rent when he married her, and that he afterwards paid on account of a debt due by her prior to the marriage the sum of $12.50.

After the death of his wife he paid, a physician's bill, amounting to $30; funeral expenses, $75; and costs and fees in the matter of her succession and of his appointment as tutor of the opponent, $70. The minor was sent to St. Mary's School, where she remained from January 18, 1892, to May 19, 1896, at an expense of $546.60. She was then sent to Mt. Carmel, where she remained from May 19, 1896, to January 24, 1897, at an expense of $71. But since the date last mentioned the evidence fails to show that the tutor has provided for her, or paid anything on her account.

The furniture, inventoried as the separate property of the wife, is said to be in the possession of the tutor, who professes his readiness to deliver it in kind. The jewelry is not shown to have come into his possession. The evidence as to the revenue derived from the tenements built on lots 7 and 10, like that in regard to the date at which those tenements were completed and paid for, is indefinite and unsatisfactory. There is no denial of the fact that the tutor has made use of the proceeds of the life insurance policy, and no reason is given why he accepted less than the amount called for by the face of that instrument. Some evidence was introduced, which we find it unnecessary to consider, as to the legitimacy of the minor.

### Opinion.

Carney obtained his appointment as tutor, and obtained possession of the estate of his ward, by alleging, and producing witnesses who swore, that she was the only child of his wife by the latter's former marriage to Espinola, and he filed his final account as tutor nearly 10 years later, without in any manner questioning his ward's capacity to inherit the property which he still holds as belonging to her; and it is only since she has challenged the correctness of his account that it has occurred to him to question her legitimacy, and thereby dishonor the memory of his deceased wife. He cannot be heard, under such circumstances, for such a purpose.

SUCCESSION OF EMONOT.

The policy of insurance was taken out upon the life of the mother for the benefit of the daughter, and the proceeds belonged to the latter, and formed no part of the succession of the former. Succession of Kugler, 23 La. Ann. 455; Succession of Hearing, 26 La. Ann. 326; Succession of Bofenschen, 29 La. Ann. 711; Pilcher v. Insurance Co., 33 La. Ann. 322; In re Moseman's Estate, 38 La. Ann. 219; Putnam v. Insurance Co., 42 La. Ann. 739, 7 South. 602; Succession of Brownlee, 44 La. Ann. 917, 11 South. 590; Stuart v. Sutcliffe, 46 La. Ann. 240, 14 South. 912; Bransford v. Bransford, 46 La. Ann. 1222, 15 South. 678; Tutorship of Crane, 47 La. Ann. 901, 17 South. 431; Hays v. Lapeyre, 48 La. Ann. 757, 19 South. 821, 35 L. R. A. 647; Lambert v. Insurance Co., 50 La. Ann. 1027, 24 South. 16; Succession of Buddig, 108 La. 406, 32 South. 361. Nor were those proceeds inventoried or collected as belonging to the succession. They were inventoried, at the instance of the tutor, as belonging to the estate of the minor, and they were collected by him, so far as they were collected at all, in his capacity as tutor, and for account of his ward. He does not, however, appear to have collected the full amount called for by the face of the policy, and the statement in the pleadings that he submitted to a discount of 8 per cent. in order to effect an "immediate collection" is contradicted by his testimony to the effect that the collection was made only after a delay of 90 days. He is liable, therefore, as for $1,000 collected April 8, 1892, with interest at 5 per cent. from that date. Civ. Code, arts. 347, 348, 353, 3072; Fuselier v. Babineau, 14 La. Ann. 769. There is no proof sufficient to establish the claim that the furniture owned by Mrs. Espinola was worth $300, that she owned any grocery, or that any jewelry belonging to her went into the possession of her second husband. Upon the other hand, as she left surviving her a child by a former marriage, and no children by the last marriage, the surviving husband had no usufruct of her estate, whether paraphernal or community; and he must account for it, and for its revenues, after deducting such amounts as he may lawfully have expended for account of the child. The paraphernal estate consisted of furniture valued at $29.50, and it owes the husband about that amount,

so that the one account may be considered as compensating the other, though the minor should have the option of taking the furniture and paying the debt due by the estate, if she prefers to do so.

The wife's estate in the community consists of an undivided half interest in the property acquired by the community, and in the revenues thereof from the date of the death of the wife, after payment of the debts due by the separate estate of the wife to the husband and to the community, and of the debts due by the community to the husband and to other creditors. The property acquired by the community consists of the two lots, Nos. 7 and 10, with the improvements thereon, and the revenues are the rentals derived therefrom.

The only debt due by the estate of the wife to the husband is that above referred to, and compensated as stated. There is nothing due by the wife's estate to the community.

The community appears to owe no debts at this time, save those which the husband claims to be due him, and which will be considered and disposed of in so far as the evidence in the record enables us to dispose of them.

The community owes to the husband:

| | |
|---|---:|
| Amount brought in at marriage | $1,000 |
| Amount paid to Dr. Kelly last illness of wife | 30 |
| Amount paid for funeral expenses of wife | 75 |
| One-half amount paid for opening succession and appointment of tutor | 35 |

The husband asserts that the community owes him $1,200 as the amount expended in the construction of the two double tenement cottages on lots 7 and 10, but it is not clear that such is the case. He claims to have put $1,000 into the grocery in 1888, and the grocery then or thereafter became community property, and was sold for $700 cash; and, as it was at that time that he built the cottages, it seems probable that the $700, or part of it, was used in paying for them, in which event the community owes him nothing for the amount so paid, and would only owe the difference between that amount and the total cost.

He claims $300 on account of an alleged community debt paid to Smith Bros. & Co., and $500 on account of other community debts said to have been paid by him; but the claim is not sustained by proof. He

alleges that he paid something to the Hotel Dieu on account of his wife during her last illness, but no amount is stated, and no definite proof offered. On the other hand, although it is satisfactorily shown that he had paid $546 for board and tuition, etc., of the minor at St. Mary's School, and $71 on the same account at Mt. Carmel, the item of $230, which he himself charges for board and lodging, is not established. The items of $100 and $50, respectively, for attorney's fees and costs of court, should not be charged exclusively to the minor, but in part to the community, which is to be settled by this litigation. The evidence does not enable us to reach any conclusion as to the revenues derived from the community property; and the matter of the taxes, insurance premiums, and bills for repairs on said property seems to have been the subject of an agreement which is only partially expressed in the record. Whilst, therefore, we may finally dispose of some of the issues presented, the interests of justice require that for the settlement of others the case should be remanded.

It is therefore ordered, adjudged, and decreed that the estoppel pleaded on behalf of the opponent to the attack upon her status be sustained, and that the judgment appealed from be amended by increasing the amount allowed her as the proceeds of the life insurance policy to $1,000, and by reducing the amount to be deducted from the principal sum to $110, being $35 for costs and charges in connection with the opening of the succession of Mrs. Carney and the appointment of the tutor, and $50 for attorney's fees, and $25 for costs in connection with the account now under consideration; that it be affirmed in so far as it rejects the demands of the opponent with respect to the furniture, grocery stock, and jewelry claimed to have belonged to her mother, and to the grocery stock claimed to have belonged to the community; and that in all other respects it be annulled, avoided, and reversed. It is further ordered and adjudged that the opponent be recognized as the sole heir of her mother, and, as such, entitled to inherit the estate of the latter, whether paraphernal or in community; that, with respect to the paraphernalia of her mother, her claim against her tutor be held

to be extinguished by compensation, with reservation of her right to take the furniture on allowing her tutor the value as shown by the inventory; that, as heir of the estate of her mother in the community which existed between the latter and John Carney, the opponent be recognized as the owner of an undivided one-half interest in the real estate acquired in the name of said Carney during the existence of said community, and as entitled to one-half of the revenues derived from the same from and after April 8, 1892, the whole subject to the payment of the debts of the community; and with leave to said Carney to appropriate said revenues, as also the interest due by him on the proceeds of the life policy accruing to the opponent under this judgment, so far as may be necessary, to the reimbursement of the amounts paid by him for her account as follows, to wit, of $546 paid to St. Mary's School and $71 paid to the Mt. Carmel Convent.

It is further ordered and adjudged that said Carney be recognized as a creditor of the community existing between him and his late wife for $1,000, brought into said community, and that in his settlement with the community he be credited with $30 paid Dr. Kelly for medical attendance upon his wife; with $75 paid for funeral expenses; with $35,—being one-half of the costs and fees incidental to the opening of the succession of his wife and his appointment as tutor to her minor child; and with $75,—being one-half of the fees and costs legitimately incurred and to be incurred in the present litigation, exclusive of the costs of this appeal.

It is further ordered and adjudged that his claims against the community for $300, said to have been paid to Smith Bros. & Co., for $500 said to have been paid to other creditors of the community, and to an amount, not stated, said to have been paid to the Hotel Dieu, be rejected, and that his claim against the minor for $230 for board and lodging be also rejected.

It is further ordered that this case be remanded, with leave to the parties to offer further evidence:

(1) As to the date at which the buildings on the lots 7 and 10 referred to herein were begun, completed, and paid for, and as to the source from which the money was de-

rived by which such payment was made.

(2) As to the amount of taxes, insurance premiums, and bills for repairs paid on account of said property after April 8, 1892.

(3) As to the revenue derived from said property, and the disposition made of same after said date.

It is further ordered that the costs of this appeal be paid by the appellee, and that the costs of the lower court await final judgment.