## No. 11,744.

TUTORSHIP OF HENRY AND ADELBERT CRANE, ACCOUNT OF MRS. A. S. CRANE. OPPOSITION OF THE TWO EMANCIPATED MINORS.

A policy of life insurance made payable to the wife and children of the assured inures to his surviving widow and to his children in equal portions, share and share alike.

The share of a minor in the money collected upon such a policy is not an asset of the community, but of his separate estate; and it does not pass under the surviving widow's usufruct, though it becomes subject to her administration, as tutrix.

In the event it becomes necessary for the protection of the minors' interest in the property of the dissolved community, as well as for the preservation of the widow's usufruct, that the tutrix should use and expend the insurance money in discharge of pressing community debts, she is chargeable with legal interest as on money loaned at interest, from date of use to date of accounting.

Such interest constitutes the revenues of the minors on which the ten per cent. commissions of the tutrix is to be calculated.

The expense of an account is at the cost of the emancipated minor.

APPEAL from the Seventh Judicial District Court for the Parish of Madison. *Montgomery, J.*

*Stubbs & Russell* for Accountant and Appellant.

*Merrick & Merrick* and *A. L. Slack* for Appellees.

Argued and submitted, March 27, 1895.
Opinion handed down, April 22, 1895.
Opinion refusing rehearing, May 20, 1895.

The opinion of the court was delivered by

WATKINS, J. Albert F. Crane died in August of 1871, leaving a widow, Abigail S. Crane, and two minor children—Harry McP. and Adelbert F. Crane, opponents herein—as issue of his marriage, surviving him.

Widow A. S. Crane accepted the community of acquets and gains and took possession of the entire estate as surviving spouse and as usufructuary, and qualified as natural tutrix of the minors, and caused an inventory to be taken.

The property inventoried was all community, and consisted of a cotton plantation in the parish of Madison, a small amount of personal property, and a large amount of open accounts against plantation laborers, the appraised value of which aggregated about thirty–four thousand dollars.

The plantation was heavily mortgaged, and the deceased was otherwise largely indebted at the time of his death.

57

The deceased carried a policy of life insurance in the North American Life Insurance Company of New York for ten thousand dollars, which was made payable " to Abigail S. Crane, wife, and the children of Albert F. Crane;" and, after his death, same was collected by the surviving spouse, and used by her in the payment of community debts and succession charges, this amount not being carried into the inventory as an asset of the community.

At the time of the father's death the elder child was six years old, and the younger was an infant of one year of age; consequently the elder arrived at his majority in 1886 and the younger in 1891.

About the latter date the two emancipated minors proceeded by rule against their mother and natural tutrix for an account of her tutorship; and when same was filed they opposed it on several grounds.

They likewise called upon her for accounts of her administration and of her usufruct, and she filed the same, and they were likewise opposed.

All of the foregoing accounts and oppositions are contained in the transcript before us, but our examination will be restricted to the two accounts of tutorship, as there is in the record an agreement of counsel to the effect that nothing else shall be submitted—thus omitting from present consideration all questions appertaining to the widow's unexpired usufruct and the settlement of the succession of the deceased.

Being usufructuary of her deceased husband's share in the community property during her widowhood, the widow was entitled to the fruits and revenues thereof, without any liability to account therefor; and being subject to her usufruct, the property necessarily remained under her dominion and control, and freed from any right of interference on the part of the heirs during its existence. Hence, the question of her expenditures in the satisfaction of community debts and charges were properly pretermitted from the discussion, as being premature. The amount thus expended for account of the heirs of the deceased can not be adjusted until the proper time for her to account has arrived; and that question must be eliminated from the present discussion.

It must be limited exclusively to the money which was collected on the policy of life insurance, considered as separate and distinct

from the community, and from that fact the two following necessary consequences flow, viz. :

1. That the surviving widow was not entitled to its gratuitous use and enjoyment.

2. That she is liable to opponents, as emancipated minors, for the restitution of the capital and an accounting for its interest or revenues.

This is not questioned by the accountant's attorneys, but they do insist upon her right, first, to use and apply the annual interest on the sums due in paying her commissions of ten per cent.; second, to reimburse herself therefrom the expenses of their support and maintenance before and after their majority; third, to withdraw from their capital a sufficient amount to reimburse herself the amount of her expenditures in excess of the interest; fourth, to retain one-half of the remaining balance as her share of the proceeds of the life policy.

These are the disputed and contested questions in the case.

On these issues judgment was rendered, decreeing that the respective shares of the two children of the deceased in the policy of life insurance of ten thousand dollars was three thousand three hundred and thirty-three dollars and thirty-three and one-third cents to each, whereas the accountant charged herself accordingly.

It further decreed that, in respect to the item of *revenues* of said fund, H. M. Crane, on his separate account, have judgment for interest at the rate of five per cent. per annum from the 1st day of January, 1872, the date the insurance was collected, up to the 20th day of January, 1886, the time at which he arrived at the age of majority.

It further decreed that, in respect to the item of *revenues* of said fund, A. F. Crane, on his separate account have judgment for interest at the rate of five per cent. per annum from same date up to the 22d of July, 1891, the date at which he arrived at the age of his majority.

It further decreed that the accountant be entitled to receive, and to credit herself with "ten per cent. on the aggregate annual revenues of said above sums, under Item I of the credit side of her accounts;" and it further ordered " that the amounts claimed for support, maintenance and education of said opponents, under Item II of said credit side of said accounts be reduced to one hundred and

fifty dollars per annum—that is to say, one hundred and fifty dollars from the 1st of January, 1872, up to the respective majorities of the two children as above set forth.''

It also decreed that an allowance of one hundred and twenty-five dollars, as compensation in the way of attorneys' fees, was a proper charge against each of the opponents, and that said sums were proper credits in her favor on her accounts.

It further decreed that the amount of six thousand eight hundred and seventy-one dollars, which is charged against H. M. Crane, and the amount of five thousand and sixty-four dollars and ninety-four cents, which is charged against A. F. Crane, be rejected and disallowed.

To the foregoing particulars the following general statement is added:

''It is further ordered and decreed that, after the statement of this judgment shall have been made it should appear on striking a balance, the judgment should entrench upon the respective capitals of said minors, to-wit: Three thousand three hundred and thirty-three dollars and thirty-three and one-third cents, that so much thereof is annulled, it being decreed that the said heirs shall each receive hereunder said one-third interest in said policy, with five per cent. interest *from this date*.''

It finally recognized and gave effect to the legal mortgage of the opponents upon the real property of the tutrix, for the said respective net amounts, with legal interest from the date judgment was rendered.

From that judgment the tutrix and accountant appealed; and, in this court, the opponents appeared and answered, and requested that the judgment in their favor be so amended (1) as to allow them interest on the respective amounts found due up to the date of filing the accounts of the tutrix, the 9th of April, 1894; (2) so as to reject the commissions awarded in favor of the tutrix and accountant; (3) by rejecting *in toto* the several sums of one hundred and fifty dollars annually in favor of the said tutrix and accountant; and (4) by reducing the amount of the compensation allowed for attorneys' fees to just one-half thereof.

And, as thus amended, their prayer is for the affirmance of the judgment.

By a reference to the account rendered by the tutrix of the tutor-

ship of Adelbert L. S. Crane, it will appear that she has charged herself with two thousand five hundred dollars as the amount of his share of one-fourth of the life insurance policy; and the further sum of two thousand seven hundred and fify dollars as "the revenues thereof," that is to say, five per cent. *per annum interest* on that sum from the 1st of January, 1872, "twenty-two years."

It further appears that she credits herself on the account with the following sums, viz.:

(1) Commissions of ten per cent. on annual revenues ........ ........................... $275 00
(2) Expense of clothing, schooling and maintenance, for thirteen years at $200 ..... .. ..... ..... ........ ... ..... ........ ........ ............... ............ 2600 00
(3) : undry items of cash furnished opponents since the 1st of September 1885, aggregating ... .............. ........ ..... ......... ........ ..... .. ......... ......... 5064 97
(4) Attorneys for preparing and filing account ......... .... ................. ........ 125 00

The account of the tutorship of Harry McP. Crane is exactly similar to the foregoing, varying only in respect to details.

As the averments of the oppositions run upon the lines of the judgment appealed from, and the answer of the appellees, it is unnecessary to furnish any additional details thereof.

## I.

It has been settled by repeated decisions of this court, that money which is collected after death of the husband and father, upon a policy of life insurance made payable to his wife and children, is not an asset of the matrimonial community but of their *separate* estates.

Succession of Bofenschen, 29 An. 711; Succession of Hearing, 26 An. 326; Succession of Clark, 27• An. 269; Pilcher vs. New York Life Insurance Company, 33 An. 322; Succession of Kugler, 23 An. 455; Putnam vs. Insurance Company, 42 An. 739.

This principle is recognized by the New York court, that State being the *habitat* of the insurance company.

Barry vs. Bruno, 71 N. Y. 62; Barry vs. Life Insurance Company, 59 N. Y. 587; Dalton vs. Wilmer, 52 N. Y. 312.

See also: Lemon vs. Life Insurance Co., 38 Conn. 294; Life Insurance Co. vs. Burroughs, 34 Conn. 305; Chopin vs. Fellows, 36 Conn. 132; Life Insurance Co. vs. Brant, 1 Ins. Law Journal (Mo.,) 138; Burroughs vs. Life Assurance Co., 97 Mass. 359; Knickerbocker Life Insurance Co. vs. Wiltz, 99 Mass. 159.

The last expression of this court upon the subject is found in Stuart vs. Sutcliffe, 46 An. 240.

It thus appears that the interests, or shares of the two emanci-

pated minors were assets of their separate estates, respectively, and consequently they did not pass under their mother's usufruct, but they *did* pass under her administration as their natural tutrix. C. C. 337.

Being charged under the law with the care of the persons of her wards, and entitled to represent them "in all their civil acts" (C. C. 337), the natural tutrix was competent and authorized to collect the insurance money, on joint account for them and herself, and "to administer their estates as a prudent administrator would do." *Ibid*.

The tutrix became thus lawfully possessed of the insurance money, but she incurred the consequent legal obligation of making restitution and account to her pupils at the dates of their respective majorities.

This is not denied on either side, but a difference has arisen between opponents and accountant with regard to the amount of their respective shares of the insurance money—the widow claiming *half* and opponents *two-thirds*.

In not one of the cases referred to was the question presented or decided. But it has been decided frequently in other jurisdictions.

For instance, in Jackson vs. Nelson, 17 N. E. Rep. 529, it was decided as follows, viz.:

"It is plain Mrs. Nelson is not entitled to hold this money absolutely. Even under similar language in a will the children would have a right which they could enforce in a court of equity. Proctor vs. Proctor, 141 Mass. 165; 6 N. E. Rep. 849; Loring vs. Loring, 100 Mass. 340; Williams vs. Bradley, 3 Allen, 270, 281, 285; Raikes vs. Ward, 1 Hare, 445; Crockett vs. Crockett, *Id.* 451; *In re* Harris, 7 Exch. 344. There is nothing to show that it was intended that the sums to be devoted to the benefit of the children should be, in the first instance, determined by her in her discretion, subject to accountability. There are no words saying it shall be at her disposal for their benefit, or that she is to maintain or support them * * * In the purposes of the Royal Arcanum children are placed on an equality with widows. There is nothing showing any intention to have a permanent or continued trust. The words of the certificate are simple. She is to take the money ' for the benefit of herself and the children.' In many of the cases under wills there was something to show some discretion reposed in the primary donee, or

some duty of support or some power of disposal; but here there is nothing of the kind.  Several of the cases under wills tend strongly to show that, under language like this, the widow and the children would be entitled to share equally.. Jones vs. Foote, 137 Mass. 543'; Loring vs. Loring, 100 Mass, 340; Proctor vs. Proctor, 141 Mass. 165; 6 N. E. Rep. 849; Jubber vs. Jubber, 9 Sim. 503.  In the present case, in view of the circumstances, and of the *bald language used in the certificate, we can not go behind the plain words, and are of the opinion that Mrs. Nelson and the three children are each entitled to one-fourth part of the money.*"

It will be observed that the terms of the certificate of membership that was involved in that case are almost identical with the terms of the policy of insurance that we have under consideration here.

In *Felix, Guardian vs. Ancient Order of United Workmen*, 1 Pacific Reporter, 281, the Kansas court held that a policy of life insurance which provides that the insurance money shall " be paid to the wife and children" of the assured " without designating in what portions the same shall be paid * * * should be paid to his wife and children equally.  Each should receive an equal share, or, in other words, each should receive one-fourth of such fund.  This is the natural construction of the language."  In that case there were three children of two different marriages.

In *Hamilton vs. Pitcher*, 53 Mo. 334, it was held that a deed " to Mrs. Pitcher and her children" passed a title to them as grantees, and that " they took as tenants in common; *id certum est, quod certum reddi potest.*  Mrs. Margaret W. Pitcher being a tenant in common with her existing children, had a share in the lot, equal to *one* of the children."

In *Taylor vs. Hill*, 56 N. W. Reporter 738, the Wisconsin court held:

" As to the shares which the widow and children are entitled to take under the policy, we are clearly of the opinion that in the absence of any designation in the policy of inequality in the shares all the beneficiaries shared equally."

In *New York Life Insurance Co. vs. Inland*, 14 S. E. Reporter, 617, the Texas court announced a similar principle.

If we are to follow the course of the jurisprudence of other States —and there is no reason why we should not, upon a homogeneous

subject, we must maintain the correctness of the judgment appealed from on this question.

There is no analogy between the principle stated and that governing the inheritance of forced heirs and the settlement of the legal community, under our Code; because in the *former* case the mother and surviving widow is not an heir; and in the *latter*, the death of the father only passes his undivided share in the property.

It bears a closer analogy to that controlling the universal legacy. R. C. C. 1606, 1609.

An examination of the decisions under those articles has not, however, developed any case where the point has been squarely decided.

In Succession of Jordy, the case of a donation *mortis causa* is stated, in which the bequest was in favor of "the surviving wife and minor children;" and the decision shows that the natural tutrix "rendered an account of her administration and surrendered the property for a partition between her and the surviving heirs "—but there is no showing as to how the division was made.

But in Walker vs. Barrow, 43 An. 863, is presented a title made to Mrs. Walker and her four children, and we held that it was one of only joint ownership.

Consequently our conclusion is to treat the question as *res nova* and align our decision with those decisions we have quoted from other States and affirm the judgment, recognizing the tutrix and opponents as entitled to equal shares of one-third to each in the proceeds of the policy of life insurance.

## II.

We think it quite evident that there is due to opponents interest at the rate of five per cent. *per annum* from the date given as that when the policy of insurance was collected up to the date of filing these accounts, the 9th of April, 1894, instead of the dates at which the opponents arrived at their respective majorities.

If this was not the correct rule for computing the interest the tutrix would be exonerated from the payment of interest between those two dates. Indeed, the tutrix' account with Adelbert L. S. Crane allows "twenty-two years'" interest on its face, and that carries the computation beyond his majority.

We can perceive nothing that should defeat the opponents' claim to interest on their respective shares *after* their respective majorities.

### III.

Opponents' counsel insist that the tutrix should not be allowed commissions of ten per cent. on the amount of the opponents' annual interests, on the ground, mainly, that *they were not revenues*, because she has *used* and *consumed* the entire capital, and that opponents' claim was only an *interest-bearing debt against her*.

The law declares that " the tutor may retain as a commission for his care and labor ten per cent. on the annual amount of the revenues of the property committed to his charge." R. C. C. 349.

The Code declares that " the interest on money" is one of the " civil fruits " which belongs to an usufructuary. R. C. C. 545-547.

It necessarily follows that the tutrix is not obliged to look to the rents, income or interest of the assets of the community property to compensate her for " her care and labor " as tutrix; and the necessary corollary of the provisions of that article is that the interest on the separate money of opponents is its civil fruit, and constitutes " the revenues" on which the commissions of the tutrix are to be calculated.

The Code says that " the damages due for delay in the performance of an obligation to pay money are called interest." R. C. C. 1935.

The record shows that, at the time the tutrix collected the insurance money, there was a pressing necessity for its employment in the discharge of community debts in order to prevent the sale, and perhaps sacrifice, of the community property, and thus enable her to protect and preserve the interests of the minors, and her own as well, and also to protect her usufruct.

Here was a laudable and praise-worthy object.

Under such a state of circumstances the transaction is rather to be viewed as an irregular investment of the money producing interest, just as it would have done if it had been loaned on interest regularly.

We are disinclined to adopt counsel's theory, but prefer to adopt and maintain that of the judge *a qua* in this respect.

### IV.

We think the allowance in favor of the tutrix of one hundred and fifty dollars annually, for the reimbursement of her expenses in the

support and maintenance of the minors respectively, is but just and reasonable.

The Code declares that "the expenses for the support and education of the minor ought to be so regulated that nothing decent or necessary shall be wanting to him according to his condition in life." R. C. C. 350.

We think the judge acted in view of this wise and salutary rule in making that allowance, and we will not disturb his judgment in that particular.

### V.

On the score of attorney's fees there is nothing offered in the way of proof or argument to justify us in diminishing the amounts allowed.

### VI.

Counsel for the tutrix insist upon the judgment of the lower court being so amended and increased as to allow her the sums claimed on her accounts, respectively, of six thousand eight hundred and seventy-one dollars against H. M. Crane, and five thousand and sixty-four dollars and ninety-four cents against A. F. Crane, in reimbursement of sums she had expended for their accounts.

These sums are largely in excess of the annual revenues of opponents, and the tutrix did not procure the authorization of a family meeting. Consequently the tutrix was without any legal warrant for making such large expenditures for their accounts. R. C. C. 350.

But counsel attract our attention to the fact that the sums charged include amounts expended for the accounts of opponents since they arrived at their majorities.

Her claim thus assumes the character of a *quasi* contract, and her attitude is changed to that of a *negotiorum gestor*, subjecting opponents to the resulting obligation of making reimbursement. R. C. C. 2300.

The investigation and decision of this question lies outside of and beyond the domain of this settlement of accounts, and we will make our judgment one of non-suit, and refer its solution to the future settlement of the succession of the deceased.

### VII.

The judgment puts the cost on the accountant, whereas the Code declares that "the account of the tutorship is given at the expense of the minor; the tutor advances that expense." R. C. C. 359.

It is true that the accounts were only filed at the instance of opponents, but that is all the law obliged the tutrix to do.  R. C. C. 357.

The judgment appealed from must be amended in the following particulars, viz. :

1. So as to charge the accountant with five per cent. per annum interest on the amount of the respective shares of the opponents from the date specified in the decree up to the 9th of April, 1894—date of filing her accounts.

2. So as to make the decree rejecting the credits on the accounts for amounts in reimbursement of expenditures by the tutrix for the maintenance and support of the opponents during their minority and after they became of full age, in excess of the annual allowance of one hundred and fifty dollars each, one of non-suit.

And it is further ordered and decreed that as thus amended the same be affirmed at the cost of the opponents jointly.

## ON APPLICATION FOR REHEARING.

It was the purpose and intention of our decree to leave open any and all questions affecting or appertaining to the final account and settlement of the succession of Adelbert S. Crane, as well as that of the community between the deceased and accountant.

With this statement the rehearing is refused.