(38 South. 485.)

No. 15,316.

NEW YORK LIFE INS. CO. v. NEAL et al.*

(Feb. 13, 1905.)

**DONATION OF MOVABLES—LIFE INSURANCE POLICY—BENEFICIARIES—VESTED RIGHTS.**

1. The article of the Code which limits the donation of movables to one-tenth part of the value of the estate of the donor (Civ. Code, art. 1481) must be read in connection with article 12 of the same Code, which provides that "whatever is done in violation of a prohibitory law is void, although the nullity be not formally directed." Furthermore, "every disposition in favor of a person incapable of receiving, shall be null."

2. Under the first article, to the extent of nine-tenths, the person designated in the policy as the beneficiary was incapable of receiving. By special provision of the article, she is entitled to one-tenth of the personal property of the insured.

3. The gratuity, as relates to nine-tenths, is prohibited in any form—whether as a donation, gratuitous stipulation pour autrui, or in form of an insurance policy.

4. The insured had no property, the premium paid being about all he had, to the extent the record discloses.

*Rehearing denied April 10, 1905.

5. The facts and circumstances show that he (insured) had not abandoned all interest in the policy. The beneficiary named could not, to the extent of nine-tenths, acquire a vested right in the policy. The insured bound himself for 20 years to pay premiums annually. His children had been left without support. The proceeds, to the extent before mentioned, fall to the heirs, under the terms of the policy.

6. To the extent of one-tenth, there was an insurable interest, to which the defendant is entitled.

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the New York Life Insurance Company against Jennie Neal and others. From the judgment, Jennie Neal appeals. Modified and affirmed.

Albert Voorhies and Branch Knox Miller, for appellant. Rice & Montgomery, for appellee New York Life Ins. Co. Frank Edward Rainold, for appellee Succession of Walter A. Shinckle. William Charles McLeod, for appellees minor children of Walter A. Shinckle.

BREAUX, C. J. A policy of life insurance and its proceeds are the cause of contention.

Walter A. Shinckle left his wife in the year 1895, and three minor children, without means of support, and dependent on others, and came to New Orleans. He subsequently moved to Greenville, Miss., where he lived about a year, and returned to New Orleans and established his residence.

The testimony discloses that he lived since about the year 1899 with the defendant Jennie Neal, who is an octoroon. Shinckle's wife obtained a divorce from him in the year 1901, during the month of January. On the 15th day of June, 1902, he took out a policy of insurance on his life for $5,000. Jennie Neal was designated in the policy as his beneficiary. He paid only one year's premium—in amount, $209. He died in May, 1903. Thereafter the beneficiary sought to collect the amount. The insurance company deposited the amount of the policy, save a few dollars incurred for costs, to be paid to whomsoever is entitled thereto, under decree of court, as between the alleged beneficiary and the heirs. The administrator of the succession of Shinckle, and Mrs. Shinckle as guardian of the minors, oppose defendant's claim to the proceeds of the policy on the ground that she was the mistress of the deceased.

Personally she is not a party, for she had obtained a divorce at the date that the policy was issued to her late husband.

The evidence leaves no doubt upon our mind of the open concubinage charged between the late Walter Shinckle and defendant from a date prior to the date of the policy. She (Jennie Neal) for years assumed the name of Shinckle, and sought to be known as his wife—a name she bore until some time after his death.

The policy, as shown by indorsement thereon, was an "insurance" and "investment" policy, issued on the 20-years plan. At the end of the 20 years the policy would have been entitled to its share of the accumulated profits, had the insured lived.

The situs of the contract of insurance is here. The contract was agreed upon here, to be executed at the home of the insured. It must be governed by the laws of Louisiana.

The right of the parties relates back to the date of the contract of insurance. It was then that the insured agreed with the insurance company that, for a stated amount to be paid annually, the latter would pay to the beneficiary named in the policy the amount of the policy.

Could the assured divest himself of an amount, as he did, to invest it for the benefit of the payee named in the policy, is the question for our determination?

No evidence proves that there was any contractual obligation between these parties, nor does it appear by testimony that she nursed or took care of the insured, or that

he was indebted to her. We do not consider that indebtedness by the assured to the asserted beneficiary is in this case, as it is not stated in the pleading that she had any claim against him, nor made to appear by the testimony.

On the face of the papers, the insurance was gratuitous. We are not warranted in concluding that the insurance had anything about it in the nature of an onerous donation. It was a donation, pure and simple, made under the form of insurance.

The insured had it in his power to donate one-tenth of his personal property, even though the donee was his concubine. The article of the Code having a direct bearing on the issue we copy in full:

"Those who have lived together in open concubinage are respectively incapable of making to each other, whether *inter vivos* or *mortis causa*, any donation of immovables; and if they make a donation of movables, *it cannot exceed one tenth part of the whole value of their estate.* [Italics ours.]

"Those who afterwards marry are excepted from this rule." Article 1481, Civ. Code.

This was the extent to which he could go, and no further. This is the ne plus ultra of the law. The limit being laid down in express terms, we are not at liberty to enlarge it. The law's permission accentuates the necessity of limiting the gratuity to one-tenth.

Contracts looking to the expenditure of a larger proportion than one-tenth, and conferring a benefit quite large as compared with the property owned by the assured, in our view, fall under the language of the article. The testimony does not disclose that the assured owned anything at the date that he took out the policy. We are not made aware that he had any property at all when he left his family in Ohio and came to New Orleans to reside, or that he ever acquired anything. The testimony gives rise to the strongest implication that he had no property at any time while residing in New Orleans. We lay down as a proposition that

the father without means, who insures himself for the benefit of a third person, contrary to a prohibitory law, obtains a scant right in favor of one who joins him in violating the prohibition.

True, the premium paid by him to obtain this right was small—only two hundred and a few dollars. It was larger, however, than 10 per cent. of all his property, for not only did he not own $2,500, but it does not appear that he owned any property at all. He only left children, for whom he failed to provide and support.

The assured was a steamboat pilot, who earned the wages of a pilot. What they were is not important here, as it does not appear that he ever economized any part of his earnings.

Policies of insurance are sometimes referred to in our decisions as stipulations pour autrui. Considered as a stipulation pour autrui, as it was created without consideration as between the intended beneficiary and the assured, it must be considered in the light of a donation.

The question of consideration is of some importance.

The defense will admit that there is no proof in the record of consideration from her to the assured. Counsel for defendant, in the absence of proof, are pleased to contend that the onus of proof was with the opponents to her claim. We answer: It has been established that she was the concubine of the insured, a married man. The onus from that moment rested with her of proving legal consideration. The question this suggests was discussed in Succession of Beard, 14 La. Ann. 121, and the result is not favorable to defendant's contention.

In stipulating for the benefit of another, the assured and the assurer contract obligations toward each other. The assured binds himself to pay the premiums, and leaves it to the person for whose benefit he contracted to accept or reject the policy.

It results that, instead of there being a presumption that the assured received a consideration from the third person, the presumption is that it is gratuitous, in the absence of proof to the contrary. We do not state that there is absolutely no moving cause. No person in his right mind ever stipulates for the benefit of another unless he has an interest of some sort or is in some way concerned. Here, we have stated, there was no indebtedness by assured to intended beneficiary. Whatever consideration there was to the extent before mentioned, it is entirely condemned, and is not to be taken into account.

We are then to view the contract as covering a gift. The article of the Code cited supra prohibits such gifts for the "sake of public order or good morals." Civ. Code, art. 11. And whatever is done in contravention of such a prohibitory law is void.

We have therefore considered the stipulation in the light of a donation. Considered strictly as an insurance, it is still a gratuity under the guise of insurance. Where is the lawful consideration? There is absolutely none.

Practically there is no difference between a donation, a gratuitous stipulation pour autrui, and gratuitous insurance. An owner of property, head of a family, cannot divest himself by insurance upon his life of all his property, to the injury of his children, and in violation of good morals and public policy. If, in insuring, he violates the prohibition in question, the law strikes down the insurance as effectually as it would a donation or a gratuitous stipulation pour autrui.

There would be grave inconsistency if it were not possible to make donations in the direct form, and at the same time leave an open and inviting door to dispose of property by insurance in violation of a prohibitory law.

It should not be possible to disregard obligations to one's offspring by insuring, and at the same time strike down donations, where it is manifest that the former may be made as effective as the latter to accomplish a purpose the law reprobates.

In attempting to difference insurance from donation, it has been urged that the capital represented by the policy is earned after the death of the assured; that the benefit comes only after death, and that the amount is placed to his or her benefit after that event only; that it is not a value created by the assured; and that in consequence he, or the representatives of his succession, are not in a position, as relates to the policy, to claim that consideration went forward by its terms from assured to intended beneficiary. This would be true, were the asserted beneficiary one who holds under legal designation. She does not.

We will state in the first place, in meeting this ground, that we are considering the terms of an endowment policy. It contains special conditions and stipulations, going to prove that it was a value created by the assured, which he sought to convey. It would have no value without the premiums. Its value continually increased, and, had he lived to 20 years mentioned in the policy, it would have been collected. The assured and the intended beneficiary could look forward to a date at which they would collect capital and accrued dividends.

There was a common interest between the two—the assured and the asserted beneficiary.

It is scarcely possible that the law ever contemplated that the assured for years could pay an amount for insurance in order that the alleged beneficiary might collect capital and dividend, while his children are left to the cold charity of the world; that he could consent to expend his earnings during remainder of his life, to leave at his demise an accumulated capital to his mistress.

In our view, the designation of the beneficiary named, for many reasons, was a pro-

hibited act. If she could not receive by donation, she could not receive by designation in an insurance policy. The insured could not thus do away with all his limited earnings. She should have known that she could not, in the manner proposed, and to the extent she claims, become the beneficiary of the insured's bounty.

In our decisions the contract of insurance is referred to as containing a stipulation pour autrui. Miller v. Manhattan Life Ins. Co., 110 La. 652, 34 South. 723; Widow Lambert v. Insurance Co., 50 La. Ann. 1027, 24 South. 16; Succession of Brownlee, 44 La. Ann. 921, 11 South. 590.

We will here add that the fact that it is a stipulation pour autrui, under the circumstances, adds nothing to defendant's rights.

We have at hand French authority upon the subject, and, although only persuasive, we will cite it in the absence just at this time of one of our own. It is therein held that advantages stipulated pour autrui, except as relates to form, constitute a real donation. Cass. (Dalloz) year 1884, 26th March, p. 275.

The court thinks of no difference between a donation, an insurance, and a consequent stipulation pour autrui.

The insurance contains a gratuitous stipulation pour autrui. This is in reality a donation.

In line with this idea, we insert a proposition from Huc, vol. 7, p. 69, § 47, on the subject of the stipulation pour autrui, which is sustained by decisions of French courts in considering donations, insurance, and consequent stipulations pour autrui.

"Que ce même tiers se trouve vis-a-vis du stipulant, dans la situation soit d'un donataire, soit d'un creancier desinterresse, sans avoir même été consulté."

This was said with reference to the act before mentioned.

Being a prohibited donation in any form, or under whatever name is chosen for it, it is prohibited, as before mentioned.

"Que l'engagement: Stipulations pour autrui est nue pour recompenser une concubine de ses complaisances." Dalloz, Supplemental, 11, Verbo "Obligation," p. 458, No. 82.

Considered from any point of view, the assured procured a benefit which was payable at his death. It was not an alea, so far as she was concerned—a mere chance—for at his death, or at the end of 20 years, had the named beneficiary remained unchanged, and the assured had continued to pay the premiums, she was certain to collect, had it not been obtained in a manner which renders it impossible, under the terms of the law, to give it sanction. The defendant, were she to collect the policy, would take nothing by inheritance. None the less, it would be a derivative right acquired through the assured, of which she (the beneficiary) would be the donee.

The assured had performed his part of the agreement with the insurance company. The designation he made, as before mentioned, was an impossible designation.

At this point we come to the question whether the heirs of the late Walter Shinckle are the proper parties to whom to pay nine-tenths of the policy. The company has tendered the amount. There is no beneficiary named in the policy, capable of receiving over one-tenth of the policy. The remainder is the property of the heirs, in accordance with the clause of the policy which reads:

"If there is no beneficiary living, at the death of the insured the proceeds of the policy shall be paid to the Executors, Administrators, or Assigns of the Assured."

The validity of this clause is sustained by citations in Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924.

The stipulation has not been executed. There must be a licit designation to enable the named beneficiary to accept the policy or collect the proceeds thereof.

"En matière d'assurance sur la vie, la jurisprudence d'après laquelle le tiers ne devient

*créancier de l'assureur que par l'acceptation, mais avec effet retroactif au jour de contrat."* Dalloz, Nouveau Code Civil, vol. 11, p. 952, § 53.

There was no valid acceptance, and the beneficiary in consequence did not at any time become a creditor.

Every disposition in favor of a person incapable of receiving shall be null. Extract article 1491, Civ. Code.

In transitu from the insurance company to the beneficiary the fund was arrested and deposited. Before it reached the possession of the intended donee, we were called upon to determine whether or not she was entitled to it. Therefore there is nothing here in the nature of an executed contract.

We pass to another ground urged by opponents against defendant's demand, having bearing to the extent that she is entitled to one-tenth of the policy, viz., that there was a want of insurable interest.

It must not be overlooked that the insurer took out the policy in his own name, and paid the premium. It has repeatedly been decided that each case (upon the question here) should be governed by its own facts. In jurisdictions in which juries find the main facts at issue, the question of insurable interest is left to be decided by that body.

"The weight of authority now seems clearly to be that the taking out of a policy on one's own life for the benefit of another, who has no insurable interest therein—the former paying the premium—so far differs from an assignment that the beneficiary may recover on the policy when the transaction is not a mere cloak for a wager." Heinlein v. Imperial L. Ins. Co., 101 Mich. 250, 59 N. W. 615, 25 L. R. A. 627 and note, 45 Am. St. Rep. 409; Souder v. Home Friendly Society, 72 Md. 511, 20 Atl. 137; Steinback v. Deipenbrock, 158 N. Y. 24, 52 N. E. 662, 44 L. R. A. 417, 70 Am. St. Rep. 424; Albert v. Mutual L. Ins. Co., 122 N. C. 92, 30 S. E. 327, 65 Am. St. Rep. 693; Kentucky Life & Acc. Co. v. Hamilton, 63 Fed. 93, 11 C. C. A. 42; Prudential Ins. Co. v. Hunn, 21 Ind. App. 525, 52 N. E. 772, 69 Am. St. Rep. 380; Same v. Liersch (Mich.) 81 N. W. 258.

The opponents to defendant's demand urged that the assured had never surren-

dered all control of and interest in the policy; that it was not an absolute, independent insurance for the exclusive benefit of the named beneficiary.

Having taken that position, and gained to the extent of one-tenth, they cannot be heard to say that the insured had no interest whatever.

His own interest, and afterward the interest of his children, support the policy to the extent before mentioned, which controls the question. The case, because of its facts, is special and sui generis as to this last point.

The cause of defendant is not that of a third person, a stranger, unknown, in matter of the policy. If she were, then there would be no majority opinion of this court on this point. Agents have been known to insure their principals for a legitimate purpose, masters their servants, and servants their masters, and the contract of insurance sustained. The insured in the case before us intended to insure for the benefit of defendant, and she accepted to the extent of one-tenth, at least. There was no violation of law, and an actual interest. He and she were both interested. And there was nothing to show there was any wagering purpose.

In regard to it the jurisprudence of this country is divided. The case before us, we think, falls within the line of the cited cases supra. There are others, although of a contrary view, that would none the less support the present policy.

It is therefore ordered, adjudged, and decreed that the administrator of the succession of Walter A. Shinckle and the guardian of his children, appellees, do have judgment affirming the judgment of the lower court to the extent of nine-tenths of the amount of the policy in the New York Life Insurance Company, in which defendant Jennie Neal is named as beneficiary.

It is further ordered, adjudged, and de-

creed that the judgment be avoided, annulled, and reversed as to one-tenth of the said policy, and it is now ordered, adjudged, and decreed that defendant Jennie Neal, appellant, recover judgment for one-tenth of the amount of this policy, subject to charges stated in the judgment appealed from.

The judgment is amended as above, and, after amendment, is affirmed, at appellee's costs in this court.

PROVOSTY, J., dissents.  MONROE, J., takes no part.