(38 South. 880.)

No. 15,714.

Succession of JOHNSON.

(June 5, 1905.)

SUCCESSION—CLAIMS OF COLLATERAL HEIRS—. LIFE INSURANCE POLICY—INTEREST OF CONCUBINE.

1. The succession is claimed by the collateral heirs, to which claim there can be no objection, save as relates to a policy of insurance which was taken out by the deceased whose succession is claimed, although they (claimants) did nothing for their brother while he lived, and gave themselves no concern about him after his death.

2. Concubinage with the one whose succession is claimed was the beneficiary of the policy, and it was stipulated with the insurance company that she should pay all premiums. They were all paid by her.

3. The deceased (nominally the insured) did not expend a cent on the policy. She (the beneficiary of the policy) rendered faithful services to the deceased, and when he died she pledged her policies in order to obtain for him a decent funeral. He made her no donation. Under her investment she acquired a right to the proceeds of the policy.

4. The case is easily differenced from New York Life Insurance Co. v. Jennie Neal, 38 South. 485, 114 La. 652.

(Syllabus by the Court.)

Case Certified from Court of Appeals, Parish of Orleans.

In the matter of the succession of Frank Johnson. From the decree, Lucile Johnson appeals to the Court of Appeal. Case certified. Answer filed.

Lievin De Poorter and William Alexander Bahns, for appellant. George W. Moore, for appellee Rose Johnson. Edgar Mayer Cahn, for appellees Geddes & Co.

BREAUX, C. J. We are informed by the statement before us that the record shows that Frank Johnson died intestate, leaving personal effects of little value, of which no inventory has been made.

He left no forced heirs. His collateral heirs claim his succession.

He was not married.

For 10 years or more he had lived with Rose Johnson as his wife. She cared for his household and attended to his wants. She was with him in his last illness, and when he died she applied herself to have him properly buried.

Some years before his death—the number is not disclosed—he insured his life, naming Rose Johnson as beneficiary.

For the small amount hereafter mentioned there are two policies. In one of these policies she is named as his wife; in the other she is mentioned as a cook.

She paid the premiums. It was stipulated in the policy that she would pay them.

After the death of Frank Johnson, the insurance company deposited the $180, sum due on the policies, in court.

It appears that she assigned the policies to the undertakers, who were Geddes & Co., as security.

The company furnished the burial outfit and performed the service usually performed by the undertaker in burying a person.

Geddes & Co., undertakers, claim the amount of their bill under the assignment before mentioned.

The brothers and sisters, who rendered no service whatever, and gave themselves no concern about his funeral, claim the insurance on the ground that the insurance was contra bonos mores by reason of the fact that the beneficiary was the insured.

We will here state that Frank Johnson and Rose Johnson were colored people, and lived together as man and wife. They were known as such. There was no impediment to their marriage, and no one had any claims upon them. She paid all the premiums on the policies. Therefore the brothers and sisters of her husband did not have the least right to claim that Johnson, their late brother, from whom they now wish to inherit, contributed one cent toward keeping up the policy. If they were to inherit this policy, they would receive something toward securing which their late brother paid nothing whatever.

Besides, she (Rose) rendered services, we infer, from the statement, which were in no way connected with the concubinage charged. She was as dutiful and attentive as a wife usually is.

We cannot imagine what claims the brothers and sisters can have upon this fund. She earned the amount by paying the premiums. The use of his name in order that she might collect a small amount on insurance was not an act of which collateral heirs could avail themselves to their advantage for collecting the amount received. He (Johnson) never stipulated pour autrui. Here the third person, Rose Johnson, stipulated for herself. On the face of the papers, she was to pay the premiums and receive the amount of the policy.

The stipulations were between Rose Johnson and the insurance company. Under its terms the insurance company looked to her for the premium. She, in turn, had the right at maturity to look to the company for payment. The policy was hers, as much so as any other property she may own or may have acquired in her name. There was no gift here of any kind.

It does not fall within the language of the Code. If the one living in concubinage makes a "donation of movables, it cannot exceed one-tenth part of the whole value of their estate." Rev. Civ. Code, art. 1481.

Frank Johnson has made no donation to Rose Johnson. He has given her absolutely nothing. He has not given an amount in ex-

cess of one-tenth of his movable property, because he had no property. The policy did not belong to him. He had no interest in it in any manner, shape, or form.

It is not possible to consider this policy as something of value to the late Frank Johnson, and upon that assumption take it that he has violated the cited article.

As beneficiary named in the policy who kept up the policy by paying, as before mentioned, she was the owner. If she was the owner, it cannot be taken from her on the ground that the late Frank Johnson was the owner.

We have reconsidered the case of New York Life Ins. Co. v. Jennie Neal (No. 15,316) 114 La. 652, 38 South. 485, from the point of view suggested by this inquiry. We have not found similarity in the two cases. In the Neal Case Schinckle took out the policy and paid the premium. She (Jennie Neal) held the policy as a gratuity, and in time, had the insured lived, it would have been a paid up policy, without acceptance on her part or payment of the premium. Besides, there were other grounds in the Neal Case that are not in this case. The father of the family, as in the Neal Case, cannot enrich his concubine and leave his children in abject poverty. That would be against all law, human and divine.

A contract whereby he (the insured) would secure to his mistress a handsome amount by his own exertion, while his minor children are dependent upon the charitable consideration of others, does not recommend itself.

We answer the question as follows:

The beneficiary in this case (15,714), who has paid all the premiums, is entitled to recover the full amount of the policies, to the exclusion of the collateral heirs of Frank Johnson, and her right is not restricted to the one-tenth allowed by the Code to a concubine.