DOMENGEAUX, Judge.
This appeal evolves from a concursus proceeding initiated by the Woodmen of the World Life Insurance Society, wherein it deposited the sum of $19,937.61 into the Registry of the Court. That deposit represented the proceeds from two life insurance policies which it issued on the life of Terry A. Bearb, who died on October 12,1979, as a result of Hodgkin’s disease.
During his last illness the decedent, Terry A. Bearb, while in the hospital, caused the formerly designated beneficiaries on the policies to be changed from his wife, Judy Bearb,[1] and their two minor children, Keith and Kaysha, to Debra A. LeBlanc, with whom the decedent had been living for approximately one year prior to his death. In view of the fact that Judy laid claim for herself and her children to the proceeds of the policies, the insurer impleaded them as well as the newly changed and designated beneficiary, Debra A. LeBlanc, as defendants.
At trial, as agreed to by all counsel, the only issue facing the district judge was whether or not the decedent, Terry A. Bearb, was mentally competent at the time he made the change of beneficiary designation from his first family to Debra A. Le-Blanc. If he was, the proceeds would go to Debra A. LeBlanc, and if he was not, they would go to Judy Bearb and her children.[2]
The trial judge, pursuant to very thorough and analytical reasons for ruling, decided that the decedent was mentally competent when he caused the change of beneficiary to be made and consequently awarded the proceeds of the two policies to the newly designated beneficiary, Debra A. Le-Blanc.
From this ruling, Judy A. Bearb has appealed individually and on behalf of the two minor children, questioning in effect, the trial judge’s factual determinations. On appeal, as at trial, the sole issue is the *888 state of decedent’s mental competency at the time when he caused the change of beneficiaries to be made.
For about a year prior to decedent’s demise it was necessary that he be hospitalized periodically. His last hospitalization commenced on September 14, 1979, and he remained as a hospital patient until his death on October 12, 1979. September 19, 1979, was the day on which he caused the above-mentioned change of beneficiaries to be made.
In essence there were two sets of witnesses at trial, those who favored Mrs. Bearb’s position who generally testified that at certain times before he died, Terry A. Bearb, who was under various sedations, seemed groggy and uncommunicative. The other set of witnesses, including a graduate nurse who attended the decedent, testified generally to the effect that on or about September 19, 1979, the decedent was awake and alert, perambulated in the hospital hall, was communicative, and “kidded” with the people around him. It is to be remembered that the date of the change of beneficiaries, September 19, 1979, was 24 days before Terry died.
One fact seems clear and uncontradicted, i.e., that beginning October 6, 1979, decedent began to rapidly deteriorate mentally and physically, which acceleration continued until October 12, 1979, when the ravages of the dread disease took its final toll.
We have carefully reviewed the record, and particularly the testimony of the various witnesses, and we readily conclude that the record supports the factual findings of the trial judge who in summary of the evidence stated:
“On balance it appears that the testimony of the witnesses put forward on behalf of the first family (who were the previous beneficiaries) that upon their sporadic visits to the hospital, they found the deceased heavily sedated and therefore not mentally alert, is not in the Court’s view factually irreconcilable with the other line of witnesses to the effect that when not sedated, the deceased was competent, for two reasons: 1) they may have been there at the time when he was sedated because of pain, but there may have been many periods when he was not sedated, and other testimony was to the effect that when he was not, in fact, sedated to the point of being too groggy to function, that he was mentally competent; and 2) the evidence of the nurse, the hospital records, the insurance agent, Christine LeBlanc and Debra A. LeBlanc (although the Court recognizes her status as a possible beneficiary) appear to the Court to clearly preponderate to the finding that the decedent was mentally competent and was in control of his mental faculties and knew what he was doing at the time he made the beneficiary change.”
We can see no manifest error in the trial judge’s findings, hence we affirm his decision. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
It was not for the trial judge then, nor is it for us now, to pass judgment on the decedent for his decision to change beneficiaries on these policies; nor is it within our province to determine whether the result reached here is the most equitable. As we indicated in footnote 1 herein, there were no legal impediments preventing the decedent from changing beneficiaries. The factual findings of the trial judge to the effect that Terry was mentally competent to effect the change is amply supported by the record. We have no choice but to agree with the trial judge’s conclusions.
All costs at trial and on appeal to be paid from the proceeds of the concursus deposited in the district court.
AFFIRMED.

. From whom the decedent was judicially separated.

. Life insurance proceeds, unless so designated, form no part of the estate of a decedent, but inure directly to the named beneficiary, and consequently the invalidity of donations between persons living in concubinage, as set out in Civil Code Article 1481, has no application to life insurance policies. Kelly v. National Life & Accident Insurance Co., 393 So.2d 130 (La.App. 1st Cir. 1980); Sizeler, et al. v. Sizeler, 170 La. 128, 127 So. 388 (1930). The law does not prevent a person from taking out a policy on his own life, paying the premiums, and naming as beneficiary any person he may choose, including his concubine. Morris v. Providential Life & Accident Ins. Co., 162 So. 443 (La.App. 1st Cir. 1935).